NANCY CORACCIO vs. LOWELL FIVE CENTS
SAVINGS BANK.

Middlesex. December 9, 1992. - May 5, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Tenants by the Entirety. Real Property*, Tenancy by the entirety, Mort-
gage. *Husband and Wife*, Tenancy by the entirety.

Discussion of the concept of a tenancy by the entirety, as formerly existing
at common law and as altered by St. 1979, c. 727, with respect to ten-
ancies by the entirety created after February 11, 1980. [148-151]
General Laws c. 209, § 1, did not prevent a spouse from encumbering by
mortgage his interest in property held in a tenancy by the entirety with-
out the consent of the nondebtor spouse; however, in the event of fore-
closure, the mortgagee could acquire only the debtor spouse's interest in
the property, namely, a right wholly defeasible should the nondebtor
spouse survive him. [152]
The holder of a first mortgage on property held by a husband and wife as
tenants by the entirety violated no duty to the wife, when, without her
consent, it granted a loan to the husband secured by a second mortgage
on his interest in the property. [153-154]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 18, 1990.

The case was heard by *George A. O'Toole, Jr*, J., on a
motion to dismiss.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*June Adams Johnson* for the plaintiff.

*Philip S. Nyman* for the defendant.

LIACOS, C.J. The plaintiff, Nancy Coraccio (Coraccio),
filed this action in the Superior Court against the Lowell
Five Cents Savings Bank (bank) seeking declaratory relief
and damages. The basis of the action was that the bank had
taken a second mortgage from Coraccio's husband, Stephen,

on property owned by the Coraccios as tenants by the entirety. Coraccio's complaint contained common law claims for negligence and breach of the implied covenant of good faith and fair dealing.[1] She also claimed that the bank violated G. L. c. 209, § 1 (1990 ed.), which equalizes the rights of husbands and wives in property held by the entirety, and G. L. c. 93A, § 2 (1990 ed.). Finally, Coraccio sought a declaratory judgment pursuant to G. L. c. 231A, § 1 (1990 ed.), concerning the validity and legal effect of the second mortgage and the meaning of a provision of c. 209, § 1.

The bank moved to dismiss Coraccio's complaint pursuant to Mass. R. Civ. P. 12 (b) (1) and (6), 365 Mass. 754 (1974), arguing that Coraccio lacked standing to assert any claims arising out of the second mortgage because she was not a party to it, and that her complaint failed to state a claim upon which relief could be granted. A judge in the Superior Court granted the bank's motion to dismiss as to all counts, without specifying the grounds therefor. Coraccio filed a timely appeal in the Appeals Court, and we transferred the case to this court on our own initiative. We now affirm that part of the judgment dismissing Coraccio's common law and statutory claims for damages, and we modify the judgment to declare that c. 209, § 1, does not prohibit one spouse from encumbering his or her interest in entireties property.

---

[1]Coraccio's complaint also alleges that the bank intentionally interfered with a privileged relationship between her and her husband and that the bank's attorney, James A. Hall, was negligent in processing the loan. Coraccio did not appeal from the dismissal of the count against the attorney and he is not a party to the appeal. Other than to mention the intentional interference count in a list of the complaint's allegations, Coraccio does not discuss these counts or offer any argument as to why they should not have been dismissed. We therefore treat them as waived. See *Maillet* v. *ATF-Davidson Co.*, 407 Mass. 185, 194 (1990); Mass. R. Civ. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

In addition, in her appellate brief, Coraccio states that her "complaint is also analogous to the tort of disparagement." To the extent this statement attempts to set forth an additional cause of action, Coraccio cannot raise it for the first time on appeal.

In reviewing a motion to dismiss, we accept facts contained in the complaint, and all reasonable inferences deducible therefrom, as true. *Nader* v. *Citron*, 372 Mass. 96, 98 (1977). A court may grant the radical relief of dismissal only if the plaintiff can set forth no set of facts which would entitle her to relief. *Spence* v. *Boston Edison Co.*, 390 Mass. 604, 615 (1983).

On June 29, 1984, Coraccio purchased property in Chelmsford.[2] To secure a loan from the bank, and at the bank's insistence, Coraccio conveyed the property to herself and her husband as tenants by the entirety, and Coraccio and her husband then granted a first mortgage on the property to the bank. On January 29, 1987, the bank loaned $10,000 to Coraccio's husband alone. To secure this loan, the bank demanded and received a second mortgage on the property from Coraccio's husband alone. Coraccio neither assented to nor had notice of this transaction. This second mortgage was later discharged. On July 21, 1988, the bank loaned $65,000 to Stephen Coraccio, and again requested and received a second mortgage on the property from him alone. Coraccio did not know of or assent to the granting of the second mortgage. Coraccio's husband apparently defaulted on this mortgage, and the bank began foreclosure proceedings against him on January 4, 1989. Coraccio learned of the foreclosure (and the existence of the second mortgage) only after reading the foreclosure notice in the newspaper.

We first address Coraccio's request for declaratory relief. Because Coraccio's action for declaratory relief was properly

---

[2]Coraccio's complaint does not describe the property other than to list its street address. This address is identical to the address given as Coraccio's residence in the complaint. The defendant, however, concedes in its brief that the second mortgage "on Stephen Coraccio's interest as a tenant by the entirety, does not affect Plaintiff's right to continued possession of *her home* or her right to survivorship" (emphasis supplied). We take this as a concession that the property is the plaintiff's "principal residence" within the meaning of G. L. c. 209, § 1, quoted *infra* at 150.

brought,[3] the motion judge should have made a declaration of the rights of the parties, vis à vis the second mortgage rather than dismissing all of Coraccio's counts. See *Gleason v. Galvin*, 374 Mass. 574, 577 (1978). Coraccio is entitled to a declaration whether, under G. L. 209, § 1, a mortgage of property held by the entirety, granted by one spouse without the other's knowledge, can be a valid encumbrance. We declare that nothing in the statute prevents one spouse, acting alone, from encumbering his or her interest in property held by the entirety.

The concept of a tenancy by the entirety is one of ancient common law origin; it has been described as a form of concurrent ownership that may exist only between coowners who are husband and wife. In *Raptes v. Pappas*, 259 Mass. 37, 38 (1927), we stated:

> "At common law in such a tenancy the husband and wife are seised of the estate so granted as one person, and not as ordinary joint tenants or tenants in common, and an incident of such an estate is that the survivor of the marriage is entitled to the whole, a right which one cannot destroy without the assent of the other. *Morris v. McCarty*, 158 Mass. 11 [1893]. 'By that law the right to control the possession of such an estate during their joint lives is in the husband, as it is when the wife is sole seised. "Neither could convey during their joint lives so as to bind the other, or defeat the right of the survivor to the whole estate", . . . but, subject to this limitation, the husband has the rights in it which are incident to his own property, and the right which by the common law he acquires in the real property of his wife.

---

[3]We believe that Coraccio's request for declaratory relief was "properly brought," therefore entitling her to a declaration of her rights, see *Boston v. Massachusetts Bay Transp. Auth.*, 373 Mass. 819, 829 (1977), because by arguing that property in which she held an undivided one-half interest had been encumbered improperly, she set forth an "actual controversy" involving a dispute about the legal status of her ownership interest. See G. L. 231A, § 1 (1990 ed.).

He has, during coverture, the usufruct of all the real estate which his wife has in fee simple, fee tail, or for life.' *Pray* v. *Stebbins*, 141 Mass. 219, 223, 224 [1886]. Statutes relating to the separate rights of married women have not changed the common law rights of the husband in such estates. *Pierce* v. *Chace*, 108 Mass. 254 [1871]. *Pray* v. *Stebbins, supra. Boland* v. *McKowen*, 189 Mass. 563 [1905]. *Voigt* v. *Voigt*, 252 Mass. 582 [1925]."[4]

Later, in *Licker* v. *Gluskin*, 265 Mass. 403 (1929), we repeated the view that, while the husband, but not the wife, could alienate an interest in the property such an alienation could not defeat the right of the survivor spouse. We stated:

"Both husband and wife are seised of such an estate *per tout et non per my* as one person, and not as joint tenants or tenants in common. Alienation by either the husband or the wife will not defeat the right of the survivor to the entire estate on the death of the other. There can be no severance of such estate by the act of either alone without the assent of the other, and no partition during their joint lives, and the survivor becomes seised as sole owner of the whole estate regardless of anything the other may have done." *Id.* at 404.[5]

---

[4]We later held that where the spouses are divorced the estate is converted into a tenancy in common. See *Bernatavicius* v. *Bernatavicius*, 259 Mass. 486 (1927). There is no allegation that the spouses are divorced, nor is there anything in the record to indicate a divorce has occurred. While there is an allegation that Stephen Coraccio reconveyed the property to his wife *after* the giving of the record mortgage to secure his debt, there is nothing of record to show the terms or circumstances of this reconveyance. Additionally, the parties make no argument as to what effect, if any, this reconveyance may have on the bank's interest. Thus, we do not reach this question.

[5]Yet, in *Licker* v. *Gluskin*, 265 Mass. 403 (1929), the court stated that a wife, unlike the husband, could not convey even such a limited interest in a tenancy by the entirety because "its nature is such that the principle . . . does not govern the power of the wife touching her interest therein." *Id.* at 406.

Additionally, at common law, the husband in a tenancy by the entirety was entitled to exclusive possession and control of the property. *Pineo* v. *White*, 320 Mass. 487, 490-491 (1946). The wife's interest in the tenancy consisted exclusively of her right of survivorship. See *West* v. *First Agric. Bank*, 382 Mass. 534, 536 & n.4 (1981). If her husband predeceased her, the wife became the sole owner with all the rights of ownership. This right of survivorship in a tenancy by the entirety was indestructible. *Id.* Although an individual creditor of the husband could levy and sell on execution his interest in the tenancy, and dispossess both the husband and wife, the property always remained subject to the wife's survivorship right, and if the husband died before the wife, the creditor lost all of his interest. See *Raptes* v. *Pappas*, 259 Mass. 37, 38-39 (1927). The wife's right of survivorship was not attachable by her individual creditors nor alienable by her. *Licker, supra* at 406-407.

The Legislature altered this common law regimen for tenancies by the entirety created after February 11, 1980.[6] St. 1979, c. 727. In an attempt to equalize the rights of men and women holding property as tenants by the entirety, the Legislature adopted G. L. 209, § 1, which provides, in relevant part: "A husband and wife shall be equally entitled to the rents, products, income or profits and to the control, management and possession of property held by them as tenants by the entirety." Additionally, the second paragraph of § 1 provides:

> "The interest of a debtor spouse in property held as tenants by the entirety shall not be subject to seizure or execution by a creditor of such debtor spouse so long as such property is the principal residence of the nondebtor spouse; provided, however, both spouses shall be liable jointly or severally for debts incurred on account of necessaries furnished to either spouse or to a member of their family."

---

[6]All of the transactions relevant to this case occurred after this date.

The legislation granted women an equal right to enjoy the incidents of a tenancy by the entirety.[7] It also clearly precludes the seizure of the principal residence of the spouses, except as provided therein. Thus, the rule stated in *Raptes*, *supra* at 38-39, allowing a writ of entry for possession, albeit not title, was modified.

The statute did not, however, alter the characteristics of the estate itself. Merely because each spouse is "equally entitled to the rents, products, income or profits and to the control, management and possession of property held by them as tenants by the entirety," it does not follow that each has an equal one-half interest in the property. On the contrary, a tenancy by the entirety remains a unitary title, and the statute simply guarantees each spouse an equal right to the whole. Whatever the husband could do at common law, the wife now may do as well. Each spouse continues to have an indestructible right of survivorship, and the estate remains inseverable and not subject to voluntary partition. See *In re Abdallah*, 39 B.R. 384, 387 (D. Mass.), remanded, *Drury* v. *Abdallah*, 46 B.R. 718 (D. Mass. 1984), appeal dismissed, 778 F.2d 75 (1st. Cir. 1985), cert. denied sub nom. *Drury* v. *Abdallah*, 476 U.S. 1116 (1986). See also G. L. c. 241, § 1 (1990 ed.) (prohibiting voluntary partition for tenancies by the entirety). Nor, by virtue of G. L. c. 209, § 1, may a creditor of either seize the principal residence absent the joint signature of the spouses. One spouse, acting alone, cannot convey or encumber the *entire* estate, because any conveyance or encumbrance remains subject to the other's survivorship right. See *Drury* v. *Abdallah*, 46 B.R. 718, 719 (D. Mass. 1984).

---

[7]Unlike Massachusetts, many jurisdictions held, at a much earlier date, that the "Married Women's Property Acts" equalized the rights of husbands and wives in property held by the entirety. *West* v. *First Agric. Bank*, 382 Mass. 534, 542 n.14 (1981). *West* provides an excellent review of the common law principles involved in tenancies by the entirety and of potential constitutional challenges to those principles subsequent to the Commonwealth's adoption of the Equal Rights Amendment. See art. 1 of the Massachusetts Declaration of Rights, as amended by art. 106 of the Amendments to the Massachusetts Constitution.

Nonetheless, either spouse may convey or encumber his or her interest in property held as tenants by the entirety. This comports with the sounder view expressed by our sister States. Although, as Coraccio points out, some States have held that the consent of both spouses is necessary for a valid mortgage to be granted, see *Central Nat'l Bank* v. *Fitzwilliam*, 12 Ohio St. 3d 51 (1984); *Bellows Falls Trust Co.* v. *Gibbs*, 148 Vt. 633 (1987), for the most part, these States have statutes which expressly require such consent. See, e.g., *Mitchell* v. *Wilmington Trust Co.*, 449 A.2d 1055 (Del. Ch. 1982).

In light of the language of c. 209, § 1, and the common law incidents of tenancy by the entirety, the view expressed by the New York Court of Appeals in *V.R.W., Inc.* v. *Klein*, 68 N.Y.2d 560, 565 (1986), sets forth the appropriate rule: "[T]here is nothing in [our State's] law that prevents one of the co-owners [of property held by the entirety] from mortgaging or making an effective conveyance of his of her own interest in the tenancy. To the contrary, each tenant may sell, mortgage or otherwise encumber his or her rights in the property, subject to the continuing rights of the other."[8] We declare that G. L. c. 209, § 1, does not require the consent of both spouses before a mortgage may encumber the property, and that the bank, if it foreclosed, could acquire Stephen Coraccio's interest in the property, namely a right wholly defeasible should the plaintiff, the nondebtor spouse, survive him.[9]

---

[8]We note that the State of New York had long before recognized that spouses share equal rights to property held by the entirety, on the basis of that State's Married Women's Act of 1849. See *V.R.W., Inc.* v. *Klein*, 68 N.Y.2d 560, 564 (1986).

[9]The parties indicate that foreclosure proceedings are pending in the Land Court. The second paragraph of G. L. 209, §1, would prohibit the bank from executing on any interest it acquired in the property. Cf. *Peebles* v. *Minnis*, 402 Mass. 282 (1988).

We express no view on the rights of the spouses or of the creditors of either as to property held by spouses as tenants by the entirety where the property is not the principal residence of the spouses.

Despite our declaration that the mortgage may be a valid encumbrance on the property, we must consider whether Coraccio's other claims were properly dismissed. Because we hold that Stephen Coraccio had a legal right to grant a mortgage on his interest in the property, it follows, a fortiori, that the bank had a legal right to take the mortgage from him, unless it owed Nancy Coraccio some special duty. Coraccio argues that the bank did owe her a special duty by virtue of c. 209, § 1,[10] and due to the relationship created between Coraccio and the bank by the first mortgage. A first mortgage, in itself, imposes no duty not to accept a second mortgage. The bank was not negligent toward Coraccio merely by granting a second mortgage to Coraccio's husband. Coraccio's negligence count was properly dismissed.

Coraccio claims that by further encumbering property on which it held a first mortgage, the bank breached the implied covenant of good faith and fair dealing that arose from the first mortgage. This covenant, implicit in all contracts, prohibits parties from doing "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 104 (1977). Coraccio claims that one of the fruits of her contract with the bank was an implicit agreement that the bank would not further encumber the property, and that it would keep her informed of any action by it which could negatively affect the property. She cites no cases to support these assertions,[11] and they are

---

[10]It appears that Coraccio's argument that the bank was negligent in taking the second mortgage from her husband is supported only by her assertion that the bank violated c. 209, § 1, in taking the mortgage, and that "violation of a statute is evidence of negligence and with evidence of negligence, dismissal cannot be had." Our conclusion that the statute was not violated disposes of this argument.

[11]Coraccio does cite a New York case, *Lavington* v. *Edgell*, 127 A.D.2d 155 (N.Y. 1987), in which a former wife was held to have breached the implied covenant of good faith and fair dealing in a separation agreement when she secretly purchased property that, according to the terms of the agreement, was supposed to be available for her former husband to purchase jointly with her. This case is inapposite because one party denied the other "the fruits of his contract," i.e., the right to purchase contained

without merit. The Superior Court judge properly dismissed this count.

Finally, the Superior Court judge dismissed Coraccio's claim under G. L. c. 93A, § 9. This claims stands or falls with the propriety of the bank's taking of the second mortgage from Stephen Coraccio. Based on our discussion above, Coraccio clearly failed to allege a set of facts which would constitute a violation by the bank of c. 93A, and the Superior Court judge properly dismissed this count.

We order that the judgment dismissing Coraccio's complaint be modified to declare that G. L. c. 209, § 1, does not prohibit a spouse from encumbering his or her interest in property held by the entirety, without the other spouse's consent, but that the bank, in the alleged foreclosure proceeding pending in the Land Court (if it be still pending) cannot acquire possession or title over the property if the facts alleged are established. As so modified, the judgment of the Superior Court is affirmed.

*So ordered.*

---

in the agreement, and thus does not support Coraccio's assertion that implicit in a first mortgage is a duty not to accept a second mortgage.