**In re Kathleen A. HULL, Debtor.**

**Kathleen A. HULL, Plaintiff,**

v.

**NORTH ADAMS HOOSAC SAVINGS BANK, Defendant.**

**Bankruptcy No. 93–41879.
Adv. No. 92–4270.**

United States Bankruptcy Court,
D. Massachusetts.

June 30, 1994.

G. DeVon Bacomb, for Kathleen A. Hull.

Frederic Weinberg, for North Adams Hoosac Sav. Bank.

Cecilia Calabrese, Chapter 13 Trustee.

## MEMORANDUM

HENRY J. BOROFF, Bankruptcy Judge.

## I. INTRODUCTION

Before the Court is a motion for summary judgment filed by the plaintiff, Kathleen A. Hull (the "Debtor" or "Plaintiff") against the defendant, North Adams Hoosac Savings Bank (the "Bank" or "Defendant"). The motion seeks judgment on that portion of the Debtor's complaint which seeks to void a certain mortgage, dated January 5, 1988, from the Debtor to the Bank on real estate located at 67 Millard Avenue, Clarksburg, MA (the "Millard Property")[1], pursuant to 11 U.S.C. § 506.

*A. Factual Background*

The material facts are not disputed. The Debtor commenced this Chapter 13 case on July 7, 1993. Prior to the filing, on December 12, 1985, the Debtor's former spouse, Harry Hull ("Hull") acquired the Millard Property and executed a mortgage (the "First Mortgage") to the Bank in the amount of $50,800. Approximately two weeks later, Hull and the Debtor were married.

On September 8, 1986, Hull deeded the Millard Property to himself and the Debtor as tenants by the entirety. The parties have stipulated that the Millard Property was the principal residence of Hull and the Debtor during their marriage. On the same date, Hull also deeded property located at 26–28 East Quincy, North Adams, Massachusetts (the "East Quincy Property") to himself and the Debtor as tenants by the entirety. Hull and the Debtor executed a blanket mortgage ("Second Mortgage") to the Bank in the amount of $107,000 on the Millard Property and the East Quincy Property.

On January 5, 1988 Hull acquired property located at 17 Yale Street, North Adams, Massachusetts (the "Yale Property") and, in connection with the financing thereof, granted a blanket mortgage to the Bank in the amount of $85,000 on the Yale Property and the Millard Property ("Third Mortgage"), without the Debtor's knowledge or consent.

Approximately two years later, Hull commenced divorce proceedings against the Debtor in the Commonwealth of Massachusetts, Probate and Family Court, Berkshire Division (the "Probate Court"). On March 21, 1991, the Probate Court issued a Judgment of Divorce Nisi (the "Judgment")[2], pursuant to which Hull was ordered to convey to the Debtor:

> all of his right, title and interest in and to the real estate and contents thereof located at Millard Avenue, North Adams, subject to the existing encumbrances which she shall pay and indemnify and hold harmless the plaintiff from any claims, costs or expenses in connection with said property.[3]

In accordance with the terms of the Judgment, Hull deeded the Millard Property to the Debtor on May 5, 1991.

The Debtor filed her Chapter 13 petition and Chapter 13 Plan (the "Plan") in July,

---

1. The Complaint also seeks other forms of relief (e.g., a determination of the validity, priority and extent of other mortgages, the valuation of three (3) properties and the confirmation of the Debtor's Chapter 13 plan). Some of the relief is not properly requested in an adversary proceeding. *See* Fed.R.Bankr.P. 7001; *Marguerite C. McDonough v. Plaistow Cooperative Bank (In re McDonough)*, 166 B.R. 9 (Bankr.D.Mass.1994). However, the instant motion only seeks judgment with respect to the January 5, 1988 mortgage on the Millard Property and, at the hearing held on the

motion, counsel for the Debtor withdrew all of the remaining issues in the Complaint.

2. Pursuant to Massachusetts General Laws, a judgment of divorce is temporary ("Nisi") when entered, but not final ("absolute") until 90 days after the entry of the Nisi judgment. Mass.Gen. Laws Ann. ch. 208, § 21 (West 1984).

3. See Exhibit "K" of Plaintiff's Complaint.

1993. The Plan relies on the invalidation of the Third Mortgage.

Through her complaint and the instant motion, the Debtor asserts that the Third Mortgage on the Millard Property is void. The Debtor claims that on January 5, 1988, Hull had only an expectancy interest in the Millard Property (i.e. his expectancy interest as a tenant by the entirety, subject to his wife's right of survivorship to the whole). This expectancy interest was all that was transferred to the Bank by virtue of the Third Mortgage and never ripened to any other interest (i.e., tenancy in common) because of the Probate Court's Judgment and/or the conveyance of May 5, 1991. The Debtor argues that, because the March 21, 1991 Judgment and the May 5, 1991 conveyance occurred at a time that Hull's interest in the property was only that of an expectancy, the Bank's mortgage thereon evaporated when the survivorship interest was destroyed by the Judgment and/or conveyance.

The Bank argues that since Hull could validly encumber his interest in the Millard Property without the consent of the Debtor, pursuant to state law, that encumbrance could not be defeated by a simple transfer of the property. Furthermore, the Bank argues that the Probate Court ordered the transfer subject to the existing encumbrances and never intended that the Debtor avoid the Third Mortgage. Finally, the Bank argues that pursuant to another conveyance, dated May 31, 1989, from Hull to the Debtor of the Yale Property, the Debtor explicitly assumed the Third Mortgage.[4]

## II. DISCUSSION

 Pursuant to Massachusetts General Laws, Chapter 209, § 1, spouses share equal rights in property held by the entirety:

The real and personal property of any person shall, upon marriage, remain the separate property of such person, and a married person may receive, receipt for, hold, manage and dispose of property, real and personal, in the same manner as if such person were sole. A husband and wife shall be equally entitled to rents,

products, income or profits and to the control, management and possession of property held by them as tenants by the entirety.

The interest of a debtor spouse in the property held as tenants by the entirety shall not be subject to seizure or execution by a creditor of such debtor spouse so long as such property is the principal residence of the nondebtor spouse; provided, however, both spouses shall be liable jointly or severally for debts incurred on account of necessaries furnished to either spouse or to a member of their family.

Mass.Gen. Laws Ann. ch. 209, § 1 (West 1979). The statute specifically protects a nondebtor spouse's interest in the principal residence from *seizure* or *execution* by a creditor of the debtor spouse. Notwithstanding this statutory protection, the Supreme Judicial Court of Massachusetts has held that a creditor of one spouse may attach property held by the entirety while it remains the residence of the nondebtor spouse. *Peebles v. Minnis*, 402 Mass. 282, 283, 521 N.E.2d 1372, 1373 (1988). The attaching creditor's security interest is protected against claims of other creditors, and may be the subject of execution if the nondebtor spouse predeceases the debtor spouse, or if the parties are divorced. *Id.*

Recently, the Supreme Judicial Court in *Coraccio v. Lowell Five Cents Sav. Bank* further interpreted the statute to permit a spouse to convey or encumber his or her interest in entirety property without consent from the nondebtor spouse. 415 Mass. 145, 612 N.E.2d 650 (1993). In reaching this holding, the court expressly adopted the view set forth in *V.R.W., Inc. v. Klein*, 68 N.Y.2d 560, 503 N.E.2d 496, 510 N.Y.S.2d 848 (1986).

There is nothing in [our State's] law that prevents one of the co-owner's [of property held by the entirety] from mortgaging or making an effective conveyance of his or her own interest in the tenancy. To the contrary, each tenant may sell, mortgage or otherwise encumber his or her rights in the property, subject to the continuing rights of the other.

4. For the reasons stated herein, the Court does not reach this argument.

*Coraccio,* 415 Mass. at 152, 612 N.E.2d at 655, *citing, V.R.W., Inc.,* 68 N.Y.2d at 565, 510 N.Y.S.2d at 851, 503 N.E.2d at 499.

Judge Titone in *V.R.W., Inc.* encountered a dispute analogous to the instant action. Specifically, that court considered the nature of the property interest obtained by a mortgagee of entirety property where the mortgage was effective against only one spouse. After defaulting on the loan secured by said mortgage, and during the pendency of a foreclosure action by the mortgagee, the mortgagor spouse in that case conveyed his interest to the nondebtor spouse. The parties subsequently divorced.

The New York Court of Appeals first determined that at the time that the mortgage was granted, the mortgagee had acquired a contingent interest in all rights of the debtor spouse in the property. *V.R.W., Inc.,* 68 N.Y.2d at 565, 503 N.E.2d at 499, 510 N.Y.S.2d at 851. Secondly, the court addressed the effect of the conveyance:

> [T]he third party's rights in the tenancy are entitled to the law's protection, and as a consequence, the conveyance between spouses cannot be deemed effective to alter the mortgagee's bundle of rights associated with that tenancy. It follows that, as a result of the ... conveyance ... the [nondebtor spouse] had what was, in essence, the full interest created by the tenancy by the entirety, with one of those interests encumbered by the [mortgagee's] mortgage.

*Id.,* 68 N.Y.2d at 566, 503 N.E.2d at 499, 510 N.Y.S.2d at 851. The New York Court of Appeals further held that the divorce dissolved the tenancy by the entirety and transformed the interest secured by the mortgage into a tenancy in common. *Id.,* 68 N.Y.2d at 566, 503 N.E.2d at 499–500, 510 N.Y.S.2d at 851–52. In rejecting the notion that the mortgagee's rights were "immutably fixed" at the execution of the mortgage, Judge Titone ruled that the mortgagee's rights changed when the interest subject to the mortgage changed. *Id.,* 68 N.Y.2d at 567, 503 N.E.2d at 500, 510 N.Y.S.2d at 852.

■ This Court agrees with the reasoning of *V.R.W., Inc.* and finds that at the time of the Judgment and at the time of the convey-ance of the Millard Property, the transfer of Hull's interest in the property was necessarily subject to the Bank's mortgage interest. That interest was, from the time of the granting of the mortgage through the Judgment becoming absolute, an encumbrance conditioned on the reciprocal survivorship rights of Hull and the Debtor. *See Id.,* 68 N.Y.2d at 567, 503 N.E.2d at 500, 510 N.Y.S.2d at 852. During the marriage, the death of Hull would have extinguished the Bank's mortgage, while the death of the Debtor would have transformed the Bank's interest into an unconditional mortgage on the entire fee. *See Id.* Upon the divorce becoming absolute, the Bank's mortgage attached to an interest now transformed to a tenancy in common. *See Id.,* 68 N.Y.2d at 568, 503 N.E.2d at 501, 510 N.Y.S.2d at 852. Accordingly, the divorce between the Debtor and Hull did not extinguish the Bank's mortgage interest; it extinguished the right of survivorship. Sounding in logic, Judge Titone recognized:

> [i]nasmuch as we have long recognized that the nature of the property interest created by mortgages taken in these situations may be altered upon the occurrence of the specific 'condition subsequent' of a spouse's death, (citation omitted), it follows that the mortgagee's interests may also be altered upon the occurrence of a divorce decree or interest of annulment issued after the mortgage was executed. The mortgagor's rights and obligations at the time of the mortgage conveyance were subject to change upon termination of the marriage; the interest conveyed to the mortgagor should be deemed similarly transmutable.

*Id.,* 68 N.Y.2d at 568, 503 N.E.2d at 501, 510 N.Y.S.2d at 853.

■ The Probate Court had no jurisdiction to order a conveyance free and clear of a valid mortgage. *See Ellis v. Pannoni (In re Pannoni),* 35 B.R. 151, 152–53 (Bankr. D.Mass.1983). Nor did it intend to do so. The Probate Court expressly ordered Hull to convey his interest in the Millard Property *subject to* existing encumbrances. Accordingly, the Court finds that the Bank's mortgage was not voided by the Probate Court's

issuance of the Nisi Judgment and/or Hull's subsequent conveyance of the Millard Property to the Debtor.

In view of the foregoing, the Court enters summary judgment[5] in favor of the Bank and enters judgment against the Plaintiff on the Complaint.

---

**5.** In the instant action, the Defendant did not file a cross motion for summary judgment. However, the Court may award summary judgment to the nonmoving party. *See Ben. S. Branch v.* *Ropes & Gray (In re Bank of New England)*, 161 B.R. 557, 558 (Bankr.D.Mass.1993), *citing, National Expositions Inc. v. Crowley Maritime Corp.*, 824 F.2d 131, 133 (1st Cir.1987).