Cowin, J.
INTRODUCTION
The plaintiff, First Lake Corp. (“First Lake”), has filed a motion for summary judgment, essentially seeking a declaratory judgment that the mortgage it holds on property at 408 Brenda Lane, Franklin (“the property”) is valid as against the defendant, Dorothy M. Cunningham (“Dorothy”).[1] Dorothy argues that her signatures on the mortgage and an accompanying pledge agreement are forgeries. She claims that the question of the validity of her signatures creates a genuine issue of material fact which defeats summary judgment.
BACKGROUND
On June 6, 1988, defendant, William H. Cunningham, (“William” or the “husband”), in his capacity as President of C&E Marketing, Inc, (“C&E”), signed a promissory note to the Milford Savings Bank. The face value of the note was $89,080.47. The note was secured by a pledge agreement and mortgage on the Cunningham’s residence at 408 Brenda Lane, Franklin. The Cunninghams also executed personal guarantees of the note.
After the note was executed, the Federal Deposit Insurance Corporation took over the Milford Savings Bank and sold the note to First Lake. At the time of sale of the note to First Lake, the Cunninghams were in default. Diversified Financial Systems, Inc., as agent of First Lake, served C&E and the Cunninghams with notice of demand dated April 29,1992. When said demand for payment on the note went unsatisfied by the Cunninghams, First Lake brought the instant suit to recover all amounts due under the note and to “ratify” its rights under the mortgage.
The property that is the subject of the mortgage at issue in this case was purchased by William Cunningham and Dorothy Cunningham, husband and wife, as tenants by the entirety on June 5, 1972.[2] The mortgage that had been granted to the Bank on the property was recorded at the Norfolk Registry of Deeds at Book 7995, Page 400 (the “mortgage”). From the face of the mortgage it appears that both William and Dorothy signed the mortgage. William Cunningham does not dispute signing the mortgage. However, Dorothy Cunningham now asserts that she never executed the mortgage, the pledge agreement or the guarantee and that she had no prior knowledge of the existence of any of these “loan documents.”
*16 On or about March 31, 1990, William Cunningham conveyed his interest in the property to Dorothy Cunningham and recorded the conveyance at the Norfolk Registry of Deeds in Book 8663, Page 502 on June 14, 1990. William Cunningham conveyed his interests in the property to Dorothy Cunningham subject to the mortgages of record. On or about June 6, 1995, First Lake commenced a foreclosure action against Dorothy Cunningham in the Land Court.
Although First Lake has entitled its motion as one for summary judgment on the note and mortgage, First Lake is in fact seeking a declaration that the mortgage is valid as against Dorothy and that First Lake may foreclose on it.[3]
DISCUSSION
Summary judgment is granted if there are no genuine issues of material fact and if the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
When William Cunningham executed the mortgage on the property, he owned it as a tenant by the entirety. Since the Cunninghams had created their tenancy by the entirely interest in the property on June 5, 1972, the common law rights as to tenancy by the entirety applied rather than the statutory provisions of G.L.c. 209, §1 (statutory modification of the common law rule regarding spouse transfers and encumbrances). Accordingly, the husband only (and not the wife) could alienate an interest in real property. Such alienation, however, could not defeat the right of the survivor spouse to the entire estate on the death of the other. Licker v. Gluskin, 265 Mass. 403 (1929). See also Coraccio v. Lowell Five Cents Savings Bank, 415 Mass. 145 (1993). Since William could alienate the property without the consent of Dorothy, his wife, the question of the validity of her signature on the mortgage is irrelevant. William does not dispute his signature on the mortgage. Thus, the mortgage was valid at the time it was given.
Later, William transferred his interest in the property to Dorothy, as sole grantee, “subject to mortgages of record so far as the same are in force and valid.” The mortgage in question was valid and had been recorded. Accordingly, Dorothy took the property subject to the mortgage.
Ordinarily, alienation of property held in a tenancy by the entirety “will not defeat the right of the survivor to the entire estate at the death of the other.” Licker v. Gluskin, supra at 404. That is, Dorothy had a right of survivorship in the property.
First Lake claims that the tenancy by the entirety was severed, however, when William, on March 31, 1990, transferred his interest in the property to Dorothy, with her knowledge and consent. First Lake maintains that this transfer terminated Dorothy’s right of survivorship and cites for authority the case of Campagna v. Campagna, 337 Mass. 599, 605 (1958) (tenancy by the entirety cannot be changed during the marriage, except by death, divorce, a deed of both parties or a deed of one spouse to the other). First Lake argues that since William conveyed his interest in the property to Dorothy, he ended his interest in the property and deprived Dorothy of the protections of the tenancy by the entirety.
Dorothy contends that the conveyance to her cannot increase the property interest the bank received at the date of execution of the mortgage. Although she cites no authority for this proposition, it does not appear that the conveyance can increase First Lake’s interest. When First Lake received the mortgage it obtained a clearly delineated interest in the property for which it paid consideration. There is no reason that, with no further consideration by First Lake, that its interest should somehow increase. This is particularly true when the interests of a third party are affected. First Lake has provided the Court with no authority that would permit it to profit from a fortuitous expansion of its rights despite the adverse impact on Dorothy.
It is not equitable to expand First Lake’s rights (and restrict those of the wife) when all First Lake originally acquired was a mortgage subject to the wife’s right of survivorship and First Lake was not a party to the transfer of the property to the wife. Accordingly, sum-maryjudgment on First Lake’s claim that the mortgage is valid is not appropriate.
First Lake also seeks summary judgment against Dorothy on the note. Dorothy did not sign the note and thus has no liability thereunder. Because Dorothy was not a purported signatory on the note, I interpret First Lake’s claim against Dorothy on the note to mean that First Lake seeks judgment against her under the guarantee containing her signature. Assuming such is First Lake’s claim, there is a genuine question of the validity of her signature, material fact, that prevents summary judgment under said guarantee. Thus, summary judgment is denied as to Dorothy’s liability on the note and on the guarantee.[4]
ORDER
For the foregoing reasons, the plaintiffs motion for summary judgment as to the validity of the mortgage is DENIED. A declaration will issue that the mortgage is not in full force and effect as against Dorothy M. Cunningham. Summary judgment is DENIED on plaintiffs claim that Dorothy M. Cunningham is liable on either the note or the guarantee.

The action against the defendant, William Cunningham, was dismissed on October 31, 1994.

The purchase is recorded in Norfolk Registry of Deeds in Book 4841, Page 613.

The Court notes it has never been explained satisfactorily why First Lake needs this relief when .there is already an action pending in Probate Court regarding the mortgage at issue.

First Lake has not sought authority for a “temporary” foreclosure (should such a procedure exist) in order to control the property during the husband’s lifetime. Therefore, I have not addressed this issue.