## ALMA MARY INNIS, executrix,[1] *vs.* GEORGE E. ROBERTSON & another.[2]

No. 05-P-645.

Worcester. April 5, 2006. - September 15, 2006.

Present: ARMSTRONG, C.J., GELINAS, & COWIN, JJ.

*Fraudulent Conveyance. Real Property,* Conveyance. *Judgment,* Satisfaction.

In a civil action to set aside four conveyances by the defendant of property that he owned as a tenant by the entirety, the judge properly concluded that the conveyances were fraudulent as against the plaintiff, where the defendant's interests in those properties had value to the plaintiff as a judgment creditor, and it could not be said that the transfers had no effect on the assets of the defendant that were available to creditors; further, the judge correctly ruled that the plaintiff qualified as a creditor for purposes of the Uniform Fraudulent Conveyance Act, the finding that the defendant was insolvent at the time of the conveyances was not clearly erroneous, and the judge permissibly could find that the conveyances were not made for fair consideration. [391-394]

In a civil action to set aside four real property conveyances, the judge properly concluded that the transfer of all of the defendant's stock in a real estate development company did not satisfy a judgment obtained by the plaintiff against the defendant, where the stock was essentially worthless, and where the trust that subsequently purchased the real estate development company's assets was fully independent of the plaintiff. [394-395]

CIVIL ACTION commenced in the Superior Court Department on January 27, 1997.

The case was heard by *Francis R. Fecteau,* J.

*Edward J. McCormick, III,* for the defendants.

*John D. Powers* for the plaintiff.

COWIN, J. The defendants appeal from a final judgment rendered by a judge of the Superior Court (1) setting aside four

[1]Of the estate of Richard G. Innis.

[2]Sandra M. Robertson, individually and as trustee of Robertson Realty Trust.

real estate conveyances on the ground that they were fraudulent as against the plaintiff, and (2) permitting the plaintiff to reach and apply the interests of defendant George E. Robertson in satisfaction of an existing debt. The defendants challenge on multiple grounds the judge's determination that the conveyances were fraudulent. In this regard, they argue that, because the properties prior to their transfer were owned by the entirety, they could not be the subject of fraudulent conveyances; the plaintiff was not a creditor at the time of the conveyances; the plaintiff's debtor, George E. Robertson, was not insolvent at the time of the conveyances, nor did the conveyances render him insolvent; and the properties were, in any event, conveyed for fair consideration. Separately, the defendants contend that the debt alleged by the plaintiff (an amount owed on a judgment) had been satisfied, so that the conveyances in question deprived the plaintiff of nothing to which she was entitled. We conclude that the comprehensive findings of the trial judge are fully supported by the evidence, and his application of the law governing fraudulent conveyances is correct. Accordingly, we affirm.

1. *Background facts.* We recite relevant facts that appear to be undisputed. In 1988, defendant George E. Robertson (George), the owner of a one-half interest in Hopedale Development, Inc. (Hopedale Development), a real estate development company, acquired the remaining one-half interest in the corporation from the plaintiff's husband, Richard G. Innis. As the major portion of the consideration for the acquisition, George gave to Innis a promissory note in the principal amount of $900,000. In 1989, after her husband's death, the plaintiff commenced an action against George in the Superior Court wherein she alleged both nonpayment of the promissory note and fraud in the manner in which George acquired her husband's one-half interest in Hopedale Development.

It was during the pendency of that case that the real estate transfers that are the subject of the present proceeding took place. Between June and August, 1991, George and his wife, defendant Sandra M. Robertson (Sandra), conveyed four properties owned by them as tenants by the entirety; specifically, (1) apartment buildings containing twenty-four units on Dutcher Street in Hopedale (conveyed to Sandra as trustee of Robertson

Realty Trust, created at the time of the transfer of the Dutcher Street buildings); (2) residential real estate on Cutler Street in Hopedale, used by the defendants as their principal residence (conveyed to Sandra individually); (3) real property on Philip Road in Sandwich (conveyed to Sandra individually); and (4) unimproved real property on Cedar Street in Milford (conveyed to Sandra individually). Each deed recited consideration of less than one hundred dollars.

In December, 1991, the plaintiff prevailed in the 1989 action. A jury determined both that George had failed to make payment on the promissory note, and that he had taken unfair advantage of the plaintiff's husband in acquiring his one-half interest in Hopedale Development. Judgment in favor of the plaintiff entered against George in the amount of $5,072,911. On May 21, 1992, a judge of the Superior Court ordered that George's stock in Hopedale Development (then in bankruptcy proceedings) be transferred to the plaintiff (in her capacity as representative of her husband's estate) to be applied to the judgment debt.[3] George declared personal bankruptcy in July, 1992.

The plaintiff, on or about December 13, 1993 (at which time she owned all of the stock of the bankrupt Hopedale Development), filed in the bankruptcy proceeding a proposed plan of reorganization of that corporation whereby a third party, the Richard G. Innis Trust, would purchase the corporation's assets at their fair market value, with one hundred percent of the corporation's stock being transferred to an affiliated entity, Innis Land Development, Inc. (in which the plaintiff's children were interested parties). The plan was approved by a judge of the bankruptcy court on or about January 19, 1994. The Richard G. Innis Trust paid a total of $455,000 to Hopedale Development for all of its real estate assets, and those proceeds went entirely to creditors of that corporation. In 1998, most of this real estate was sold.

In 1997, the plaintiff commenced the present action to set aside the four real estate conveyances of 1991 so that, upon their return to ownership by George and Sandra, the real estate could be reached and applied to the outstanding judgment

---

[3]No value was placed on the stock at that time.

against George. Following a nonjury trial, the judge concluded that the 1991 conveyances were indeed fraudulent as against the plaintiff. The judge determined further that the transfer to the plaintiff of the stock of Hopedale Development, and her subsequent sale of the corporation's assets, pursuant to an approved bankruptcy plan, to an entity controlled by her children did not satisfy George's obligation on the judgment against him, and authorized the plaintiff to reach and apply the assets in question following the setting aside of the fraudulent conveyances.

2. *The fraudulent conveyances.* The defendants argue first that the real estate transfers that took place in 1991 cannot be deemed to be fraudulent conveyances because, by virtue of the characteristics of the tenancy by the entirety estate, the conveyances did not reduce George's ability to satisfy his obligation to the plaintiff. They rely for the proposition on *Richman* v. *Leiser,* 18 Mass. App. Ct. 308, 312 (1984), and similar cases, where it is stated: "A conveyance is not established as fraudulent conveyance upon showing of a fraudulent intention alone; there must also be a resulting diminution in the assets of the debtor available to creditors." We acknowledge the truth of the concept, but conclude that it is not applicable here.

That real property is owned by the entirety does not mean that the interest of a debtor spouse has no value to his or her creditors. At common law, "an individual creditor of the husband could levy and sell on execution his interest in the tenancy, and dispossess both the husband and wife." *Coraccio* v. *Lowell Five Cents Sav. Bank,* 415 Mass. 145, 150 (1993). However, "the property always remained subject to the wife's survivorship right, and if the husband died before the wife, the creditor lost all of his interest." *Ibid.* General Laws c. 209, § 1, rewritten by St. 1979, c. 727, and applicable to tenancies by the entirety created after February 11, 1980, while equalizing the rights of men and women with respect to the tenancy by the entirety estate, altered the common law by providing in part that "[t]he interest of a debtor spouse in property held as tenants by the entirety shall not be subject to seizure or execution by a creditor of such debtor spouse so long as such property is the principal residence of the nondebtor spouse." Thus, when a

principal residence is involved, a creditor may no longer execute on the property absent the consent of the nondebtor spouse. *Coraccio* v. *Lowell Five Cents Sav. Bank, supra* at 151.

"[General Laws c. 209, § 1,] did not, however, alter the characteristics of the estate itself." *Ibid.* While now "either spouse may convey or encumber his or her interest in property held as tenants by the entirety," *id.* at 152, the right of survivorship of the nondebtor spouse is "indestructible." *Id.* at 151. Acting on these principles in connection with the giving of a mortgage on real estate held by the entirety, the Supreme Judicial Court stated that "the bank, if it foreclosed, could acquire [the debtor spouse's] interest in the property, namely a right wholly defeasible should the . . . nondebtor spouse[] survive [the debtor spouse]." *Id.* at 152. We see no reason why the same does not apply in the case of an encumbrance created by a judgment. Thus, where the property at issue is not the principal residence of the nondebtor spouse, the judgment creditor is free to seize the debtor spouse's interest subject to dispossession should the nondebtor spouse survive the debtor. Where a principal residence is involved, G. L. c. 209, § 1, precludes such a seizure, but does not prevent a creditor from acquiring a right to the debtor spouse's interest (which will ripen into ownership in the event the debtor spouse survives the nondebtor spouse).[4]

It is for these reasons that the defendants' argument that there cannot be a fraudulent conveyance by a tenant by the entirety fails. The interests of the debtor spouse, here George, have value. They can, in the cases of the Dutcher Street, Philip Road, and Cedar Street properties, be levied on by the plaintiff, albeit subject to defeasance should George predecease Sandra. Although George's interest in the principal marital residence on Cutler Street is, by virtue of G. L. c. 209, § 1, not subject to immediate execution, it plainly has value by virtue of the fact that the plaintiff could acquire the entire property in the event that George survives Sandra. In these circumstances, it cannot be said that these transfers had no effect on the assets of the

---

[4]The judgment accommodates this difference by providing that the plaintiff may reach and apply "the interest of George Robertson in the aforesaid properties," thus limiting the plaintiff to executing only on those interests of George that are presently available for seizure.

debtor that are available to creditors. See *Richman* v. *Leiser*, 18 Mass. App. Ct. at 311-312.

The defendants' remaining objections to the judge's determination that the conveyances were fraudulent as to the plaintiff are likewise unavailing. The judge ruled correctly that the plaintiff was a "creditor" for purposes of the Uniform Fraudulent Conveyance Act (UFCA), formerly G. L. c. 109A (repeated in its entirety by St. 1996, c. 157).[5] The plaintiff was the holder of a debt, defined in § 1 of the UFCA as "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." Her fraud claim against George satisfied that definition (although the claim obviously would no longer constitute a debt were George to have prevailed in the litigation). We agree with the judge that the case is governed by *Jorden* v. *Ball*, 357 Mass. 468, 470-472 (1970). One need not have obtained a judgment in order to qualify as a creditor for fraudulent conveyance purposes. See Shapiro, Perlin & Connors, Collection Law § 14:6 (3d ed. 2000). *In Re Tracey*, 88 B.R. 512, 517 (Bankr. D. Mass. 1988), is not on point and, in any event, is not binding on this court. Furthermore, even if the plaintiff were not a creditor by virtue of her fraud claim, she was plainly a creditor as a result of her holding of George's unpaid promissory note for $900,000 (which the judge found exceeded the value of assets available to George with which he could make payment).

Nor are we persuaded by the defendants' contention that the judge's findings that George was insolvent at the time of the challenged conveyances, or that he would thereby be rendered insolvent, were clearly erroneous. Pursuant to § 2 of the UFCA, one is insolvent "when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." It is unnecessary to reprise the meticulous findings of the judge regarding the value of George's assets during

---

[5]Because the transfers at issue occurred prior to the UFCA being repealed and replaced by the Uniform Fraudulent Transfer Act in 1996, the judge properly applied the version of the statute that was in effect at the time of those transfers. See *First Fed. Sav. & Loan Assn.* v. *Napoleon*, 428 Mass. 371, 373-374 (1998).

the summer of 1991. The findings are fully supported by the evidence; indeed, it is difficult to imagine how there could be findings to the contrary. The judge was not required to credit George's testimony regarding the value of his assets, testimony which largely contradicted assertions George had previously made both to the Federal Deposit Insurance Corporation and to the bankruptcy court. The plaintiff proved actual intent to defraud on George's part. A fortiori, she proved presumptive intent to defraud, see G. L. c. 109A, §§ 4 and 6, and George failed to rebut the presumption.

Finally, the judge permissibly found that the conveyances were not made for fair consideration. Consideration of less than one hundred dollars each for George's interests in the four properties is inadequate on its face. The defendants' contention that the conveyances compensated Sandra for contributions she had previously made to the business is permeated with ex post facto rationalization. The deeds recite no such consideration; no records were kept of Sandra's work for the business; and no evidence of how her contributions were valued was presented.

3. *Satisfaction of judgment.* The defendants argue in the alternative that none of the above matters because the judgment obtained by the plaintiff in December, 1991, was satisfied fully by means of the transfer to the plaintiff of all of George's stock in Hopedale Development pursuant to the court order dated May 21, 1992. They point to the fact that, pursuant to a plan of reorganization approved by a bankruptcy judge, the corporation's assets (consisting of real estate holdings) were purchased by the Richard G. Innis Trust, and its stock was transferred to Innis Land Development, Inc., a company owned by the plaintiff's children. Subsequently, the properties were sold for significant amounts, which the defendants contend should be applied to the judgment.

We agree with the analysis of the judge. The evidence supported the judge's findings that, at the time of transfer of the Hopedale Development shares in 1992, the corporation had assets with a fair market value of $478,500 that consisted of parcels of raw, undeveloped land with no infrastructure or approval for the development of single family homes. Hopedale Development's debts greatly exceeded its assets; it was unable

to meet its financial obligations; and its stock was essentially worthless. Pursuant to bankruptcy court approval, the real estate was purchased by the Richard G. Innis Trust in 1994 for fair value ($455,000). The plaintiff received no portion of that payment, all of which went to creditors of Hopedale Development. The defendants have made no showing that challenges the judge's finding that both the Richard G. Innis Trust and the affiliated Innis Land Development, Inc., were entities that were fully independent of the plaintiff. Accordingly, any proceeds that those entities received in 1998, following four years of development efforts and a recovery of the real estate market, belong to them. There is no basis for treating these proceeds as payments toward George's judgment obligation.

*Judgment affirmed.*