**SOMERSET SAVINGS BANK, Plaintiff,**

v.

**Lawrence H. GOLDBERG, Defendant.**

**Civ. A. No. 93–10109–RCL.**

United States District Court,
D. Massachusetts.

May 5, 1994.

Mark J. Shaffer and Peter Kline, Kline, Gordon & Ginn, Boston, MA, for plaintiff.

Warren J. Hurwitz, Goodman, Greenzong & Hurwitz, Chestnut Hill, MA, for defendant.

## MEMORANDUM AND ORDER

LINDSAY, District Judge.

This is an appeal from a decision of the Bankruptcy Court. The facts are undisputed.

On November 12, 1974, the appellee, Lawrence Goldberg ("Goldberg"), and his wife took title to property located at 6 Dinsmore Road in Wellesley, Massachusetts ("the Wellesley property") as tenants by the entirety. On November 13, 1989, Super–Chem Industries, Inc., of which Goldberg was an officer, executed and delivered to Somerset Savings Bank ("Somerset") a promissory note in the principal amount of $140,000. Goldberg guaranteed Super–Chem's obligations to Somerset. Super–Chem defaulted on its obligations under the note. Thereafter, on February 19, 1991, Goldberg and his spouse conveyed the Wellesley property to his spouse for consideration of $1.00.

Somerset filed suit in a Massachusetts state court to recover on Goldberg's guaranty of the defaulted note. In that action Somerset also alleged that the conveyance to Goldberg's wife was a fraudulent transfer. On July 26, 1991, Somerset recorded a writ of attachment on the Wellesley property. On March 26, 1992, the state court granted summary judgment to Somerset against Goldberg in the amount of $121,697.21, together with interest and costs. The judgment also declared the conveyance of the Wellesley property void, restored title to the pre-existing tenancy by the entirety, and validated Somerset's attachment.

Execution on the judgment issued on July 10, 1992 in the amount of $132,125.25. On July 16, 1992, Somerset recorded the execution. On August 4, 1992, Goldberg recorded a tenancy by the entirety election pursuant to M.G.L. c. 209, § 1A. On October 30, 1992 (more than 90 days after Somerset's levy and seizure by execution), Goldberg filed a voluntary Chapter 7 bankruptcy petition with the United States Bankruptcy Court in Boston.

On November 27, 1992, Somerset filed a motion for relief from the automatic bankruptcy stay, pursuant to 11 U.S.C. § 362(d)(2)(A), in order to conduct a sheriff's sale of the Wellesley property. Goldberg filed an answer and objection, together with a motion to remove and avoid Somerset's judgment lien. Somerset informed the Bankruptcy Court that the property was subject to approximately $276,525 in outstanding liens and encumbrances. Somerset also presented an appraisal in the amount of $255,000 which it claimed indicated a lack of equity in the property. Goldberg disputed Somerset's claim and argued that there was equity in the property.

At a hearing on the motions, the Bankruptcy Court denied Somerset's motion for relief from the automatic stay and granted Goldberg's motion to avoid the lien.

### Discussion

█ Goldberg claims, and the Bankruptcy Court agreed, that the Wellesley property is exempt from the bankruptcy estate, and thus may not be touched by Somerset. 11 U.S.C. § 522 and § 522(b)(2)(B) provide that "an individual debtor may exempt from property of the estate ... an interest as a tenant by the entirety ... to the extent that such interest as a tenant by the entirety ... is exempt from process under applicable nonbankruptcy law." Section 522(f) provides that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is ... a judicial lien...."

█ In Massachusetts, a tenancy by the entirety created prior to February 11, 1980 is governed by common law. *Turner v. Greenaway,* 391 Mass. 1002, 459 N.E.2d 821 (1984). At common law, a creditor of the debtor tenant husband may take possession of the

property for as long as the debtor tenant shall live, subject to the non-debtor wife's right of survivorship. *Id.* 459 N.E.2d at 822, *citing Raptes v. Pappas,* 259 Mass. 37, 155 N.E. 787 (1927). *See Coraccio v. Lowell Five Cents Savings Bank,* 415 Mass. 145, 612 N.E.2d 650, 652–653 (1993); *West v. First Agricultural Bank,* 382 Mass. 534, 419 N.E.2d 262, 263–264 (1981). Thus, if the common law were to apply to the Goldbergs' Wellesley property, Somerset, as Goldberg's creditor, could sell the property and dispossess Goldberg's wife, subject to her right of survivorship.

In 1979, the legislature enacted M.G.L. c. 209, § 1, which states:

> The interest of a debtor spouse in property held as tenants by the entirety shall not be subject to seizure or execution by a creditor of such debtor spouse so long as such property is the principal residence of the nondebtor spouse....

This statute, which shall be referred to in this memorandum as "section 1," changed the old common law rule and effectively forbids a creditor from making a seizure of the home of the non-debtor spouse.

On February 7, 1984, the Supreme Judicial Court of Massachusetts ruled that section 1 did not apply retroactively. *Turner v. Greenaway,* 391 Mass. 1002, 459 N.E.2d 821 (1984). The court stated that "in the area of property law, the bar's reasonable reliance on a rule or a statute in effect at the time of *transfer* precludes retroactive application of a new rule or a statute unless, of course, the Legislature mandates that the statute apply retroactively." *Turner,* 459 N.E.2d at 823. (Emphasis in the original.)

In July of 1989, the Legislature enacted G.L. c. 209, § 1A, which provides as follows: "Tenants by the entirety holding under a deed dated prior to February [11, 1980] may elect to have their tenancy treated as being subject to the provisions of [c. 209, § 1]...." That statute, which shall be referred to in this memorandum as "section 1A," required the election to be recorded in the relevant registry of deeds.

Somerset argues that rules against retroactivity prevent the extinguishment of its lien pursuant to sections 1 and 1A. Somerset reasons as follows. There is a presumption against the retroactive application of statutes if such an application would disrupt settled property rights. Section 1A allows common-law tenants by the entirety to have their property treated as subject to section 1. But being "subject to section 1" is itself limited by the *Turner* case. Because the *Turner* court declined to apply section 1 to a pre-existing creditor's lien, the application of section 1, through section 1A, can never operate to safeguard a spouse's property from a pre-existing creditor's lien. Section 1A was only intended as a procedural mechanism by which property owners could avoid the inconvenience of reconveying through a straw in order to get the benefits of section 1.

Somerset's argument cannot prevail. Section 1A, on its face, permits tenants by the entirety to "have their tenancy treated as being subject to the provisions of [section 1]." The statute itself thus permits a retroactive application of section 1. Section 1A literally means that from the date of the election forward, creditors will not be permitted to seize or execute on the property of a non-debtor spouse. Section 1A provides no exception for pre-existing creditors. If the Massachusetts Legislature had desired to carve out that exception to the statute, it was free to do so. But there is simply no evidence that the Legislature intended the statute to have a narrow procedural scope which would only affect future creditors.

Somerset misconstrues the import of the *Turner* case. The Supreme Judicial Court ruled only that section 1 would be applied prospectively. In claiming that "subject to [section 1]" must mean that a pre-existing lien could not be extinguished, Somerset contorts both the court's ruling and the language of section 1A. The Supreme Judicial Court in *Turner* only addressed liens created prior to the enactment of section 1. The court did not speak to the application of section 1A, because the simple reality is that section 1A was not enacted until five years after *Turner* was decided.

Section 1A appears to be the Massachusetts Legislature's response to the *Turner* case. In *Turner,* the Supreme Judicial Court essentially stated that section 1 applies prospectively because the Legislature had

not stated otherwise. Through section 1A, the Legislature did tell us otherwise. After *Turner,* the law was left with a gap, into which fell the pre-section 1 tenancies by the entirety. Under these older tenancies, the non-debtor wife was still faced with the prospect of being forced out of her home, because of her husband's unpaid debts. The Legislature remedied the situation by enacting section 1A. To allow a creditor such as Somerset to force Mrs. Goldberg from her home would defeat the remedial purpose of the statute. *See Bengar v. Clark Equipment Company,* 401 Mass. 554, 517 N.E.2d 1286, 1287 (1988).

■ At first blush, it might appear that Somerset is an unwitting victim of outrageous fortune. Somerset successfully sued Goldberg in Superior Court, claiming a fraudulent transfer, only to have the Goldbergs make their election, declare bankruptcy and shield the property from the bankruptcy estate. But Somerset acted at its own peril from the outset of its relationship with Goldberg. After all, section 1A was on the books even before Somerset executed the promissory note which underlies this action. Somerset should have known that the Goldbergs could make the election under section 1A. To protect itself against the consequences of such an election, Somerset could have insisted, before it took Super–Chem's note, that both of the Goldbergs sign the guaranty on which Somerset ultimately brought suit; or Somerset might have taken some other action to protect its interests. Instead, Somerset took a gamble, and now it is faced with the consequences.

■ A brief word should be said about two other issues. Somerset claims that the Goldbergs' election constitutes a fraudulent conveyance because the election divests it of its lien in order to avoid a debt. But there is nothing fraudulent about the election. The Goldbergs merely did what the law permits, which is to put the non-debtor spouse's home out of the reach of all creditors.

In addition, Somerset claims in its brief that extinguishment of its lien constitutes a taking under the Fifth and Fourteenth Amendments to the United States Constitution. Somerset failed to raise this argument before the bankruptcy judge. The argument

was thus not preserved, and this Court declines to resurrect it. *See In re Mark Bell Furniture Warehouse, Inc.,* 992 F.2d 7, 9 (1st Cir.1993); *In re LaRoche,* 969 F.2d 1299, 1305 (1st Cir.1992); *In re Southeast Company,* 868 F.2d 335 (9th Cir.1989).

In conclusion, this Court affirms the ruling of the bankruptcy judge that the Wellesley property is exempt from the bankruptcy estate.

So ordered.