In re ADVANCED MINING SYSTEMS, INC., et al., Debtors.

Gary LUTIN and Certain Non–Debtor Affiliates of Debtors, Appellants–Petitioners,

v.

The UNITED STATES BANKRUPTCY COURT for the SOUTHERN DISTRICT OF NEW YORK, Respondents,

and

Advanced Mining Systems, Inc., et al., Debtors, and The Committee of Official Creditors of Advanced Mining Systems, et al., Debtors, Appellees–Respondents.

No. 94 Civ. 5744 (CSH).

United States District Court, S.D. New York.

Oct. 5, 1994.

---

Marc H. Rosenbaum, Sharfman, Shanman, Poret & Siviglia, P.C., New York City, for Gary Lutin.

Mark Broude, Arthur H. Amron, Schulte Roth & Zabel, New York City, for Official Committee of Unsecured Creditors.

Dennis J. Drebsky, Rogers & Wells, New York City, for Advanced Min. Systems, Inc.

HAIGHT, District Judge:

In this bankruptcy case, I am asked to stay proceedings in the Bankruptcy Court pending an appeal by Gary Lutin and certain non-debtor affiliates of the debtors (the "Affiliates") from an order of that Court dated June 3, 1994 (Blackshear, *J.*) expunging the Affiliate's administrative claim. The Affiliates base this requested relief on the All–Writs Statute, 28 U.S.C. § 1651, or in the alternative upon Bankruptcy Rule 8005. The debtors and the Committee of Creditors (the "Objectors") oppose the stay. I grant the stay under Rule 8005, and do not find it necessary to consider § 1651.

The standards for granting a stay pending an appeal in bankruptcy are summarized in *In re de Kleinman,* 150 B.R. 524, 528 (Bankr.S.D.N.Y.1993):

> The standards for the grant of a stay pending appeal are the same as those governing the grant of an injunction. *Sandra Cotton, Inc. v. Bank of New york,* 64 B.R. 262, 263 (W.D.N.Y.1986), *appeal dismissed,* 87 B.R. 272 (W.D.N.Y.1988), *In re Liggett,* 118 B.R. 219, 221 (Bankr.S.D.N.Y. 1990). To obtain such relief, the movant must establish (1) the strong likelihood of success on the merits of the appeal; (2) that the movant will suffer irreparable injury if the state is denied; (3) that no substantial harm will be suffered by others if the stay is granted; and (4) what the harm to the public interest, if implicated, is. [*In re Charles & Lillian* ] *Brown's Hotel,* 93 B.R. [49] at 53 [Bankr.S.D.N.Y. 1988]; *Liggett,* 118 B.R. at 221. All four criteria must be satisfied before relief under Rule 8005 will be granted. *Brown's Hotel,* 93 B.R. at 53.

In the case at bar the fourth factor is not important because the public interest is not meaningfully implicated. The second and third factors strongly favor a stay. In their briefs and arguments, counsel tend to treat these factors as the other side of the coin presented by the first factor: the likelihood of success on the merits of the appeal. Thus the Objectors say the Affiliates can suffer no prejudice from the denial of a stay because their underlying claim clearly has no merit. The Affiliates say the Objectors will suffer no prejudice from the granting of a stay because the assets involved clearly belong to them. These arguments, which cancel each other out, do not squarely address the issue, which focuses upon prejudice to either party during the interim between appeal and appellate decision, if a stay is granted or denied.

If a stay pending appeal is denied, the debtors' assets will be distributed without any reserve for the Affiliates' claim. That is the consequence of the Bankruptcy Court's subsequent order in September, which granted the Objectors' application to make a distribution to creditors without maintaining a

reserve for that claim. The inevitable result, which the Objectors cannot reasonably question, is that a denial of a stay would moot the appeal and deny the Affiliates any recovery. That is a quintessential form of prejudice to the Affiliates.

The Objectors' efforts to show prejudice to them if the stay is granted do not persuade. If the Affiliates' appeal is ultimately rejected, there will have been a delay in making certain payments to creditors, but the maintaining of a reserve in an interest-bearing account (a common arrangement of which the Bankruptcy Court is undoubtedly capable) offsets that prejudice, at least partially. It is said that undue delay might violate the schedule for consummation of the plan of reorganization. But there is no present reason to believe that Judge Blackshear would not grant extensions of time during the appellate process. It also appears from the motion papers that other matters, unrelated to that involved in the appeal, are delaying consummation of the plan. Any prejudice to the debtors and creditors if a stay is granted pales into insignificance in contrast to the prejudice the Affiliates would suffer if it is not.

I come, then, to the first factor: the likelihood of success on the merits of the appeal. Both parties contend that their position in this dispute is supported by a Settlement Agreement (the "Agreement") negotiated between them, and approved by the Bankruptcy Court on September 14, 1993. That Agreement purported to resolve a variety of disputes between the two sides, including the rights of the Affiliates to certain property in the Objectors' possession. At issue here is the Affiliates' rights to property collectively referred to as the Lease 4 Property.

The paragraphs of the Agreement upon which the parties rely are:

"(5) The Asset Transfer Agreement between SAT or SAM and the Debtor is approved by Court Order without opposition by Gary Lutin, SAT or SAM or the Non-debtor Affiliates and the Debtor's interests in Units or other assets are terminated.

(6) Debtors will, as soon as practicable, move to terminate all leases involving assets remaining with SAT after approval of the Asset Transfer Agreement;

(8) All claims by or against Debtor and the Non-debtor Affiliates or SAT will be extinguished and released."

The Affiliates claim that they purchased and leased the Lease 4 Property to the debtors, and that pursuant to Paragraph 5 of the Agreement, this property constituted "other assets" in which the debtors agreed to terminate their interest. Along those same lines, the Affiliates argue that pursuant to Paragraph 6 of the Agreement, the debtors were obligated to give up their rights in these assets, since they were the subject of a lease "involving assets remaining with SAT after approval of the Asset Transfer Agreement." Since the debtors failed to terminate the lease, the Affiliates filed their proof of claim in the Bankruptcy Court.

The Objectors claim that ownership of the Lease 4 Property was disputed prior to the consummation of the Agreement, and that any rights the Affiliates might have had in such property were waived by the "extinguished and released" language of Paragraph 8 of the Agreement.

The issue thus is whether the dispute regarding the Lease 4 Property was resolved by paragraphs 5 and 6, in favor of the Affiliates, or whether the dispute went unresolved, and was thus extinguished by the language of Paragraph 8, in favor of the Objectors.

As a starting point, I find that the Agreement at issue fails to resolve the current controversy. That Agreement clearly contemplated that some controversies between the parties had been settled, while others had not. It is not clear into which of these two categories the Affiliates' claim fell. Both parties admit that rights to the Lease 4 Property were in dispute prior to the consummation of the Agreement; that reveals little, however, about how that dispute was resolved, if at all, by the Agreement.

While the Objectors also rely on another document subsequently executed by the Affiliates, the Assignment Agreement, the Affiliates argue plausibly that this document only "ratifies" the Settlement Agreement, and adds nothing to it.

On this record, I think the Affiliates have a more persuasive explanation of the chronology of events and their likely meaning. If there were evidence in the record indicative of serious grounds for disputing the Affiliates' ownership of the Lease 4 Property, the Objectors' position would merit greater credence.

Such evidence, however, cannot be found in the record. In addition to affidavits by Lutin, who has personal knowledge of the events, the Affiliates have presented evidence of a Board Resolution made by the debtors authorizing the Affiliates' acquisition and leasing of the Lease 4 Property to the debtors; a letter from the Affiliates to the debtors confirming the substance of the Board Resolution; a report by an Examiner appointed by the Bankruptcy Court confirming and describing the leasing of Lease 4 Property by the Affiliates to the debtors; and a letter from Met Life to the debtors confirming the existence of a lease arrangement between the debtors and the Affiliates.

In the face of this evidence, the Objectors state in their conclusory opposition papers, without any separate evidentiary support, that "the assets in question were, in fact, purchased by the Debtors and never transferred to SAT or any of the Affiliates. There was no lease for the Debtors to reject, and no assets to form the basis of any claim of ownership by the Affiliates."

This contention is obviously at odds with the record put forward by the Affiliates. Because the contention lacks any support or even explanation in the record, I am bound to give greater weight to the argument of the Affiliates. The evidence in the record tends to support the Affiliates' ownership of the Lease 4 Property and the leasing of such property to the debtors.[1] Given that finding, and the totality of the circumstances as reflected by the present record, I conclude that the Affiliates have established the requisite likelihood of success. At the very least, there is a substantial question going to the merits, worthy of litigation, and all other factors militate in favor of a stay.

The Affiliates' petition for a stay pending appeal is granted. I regard the Bankruptcy Court's September 1994 order as an implementation of the June order of expungement, and subsumed by it. Nonetheless, to satisfy any lingering jurisdictional question, the Affiliates are directed to file a notice of appeal from the September order within seven (7) days of the date of this order. The appeals will be consolidated.

SO ORDERED.

[1.] I do not think that the fact that the Affiliates have acknowledged a dispute as to the Lease 4 Property, prior to the consummation of the Settlement Agreement, has any bearing on the outcome. To acknowledge that another party's position is at odds with one's own is not an admission that one's own position is lacking in substance. The Objectors cannot establish that there are strong grounds for disagreement simply by professing that they in fact disagree.