In re ST. JOHNSBURY TRUCKING COMPANY, INC., Debtor.

No. 93 B 43136 (FJC).

United States District Court, S.D. New York.

Aug. 30, 1995.

Howard Berman, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., New York City, for debtor.

Neil M. Corwin, Asst. U.S. Atty., Mary Jo White, U.S. Atty., New York City, for U.S.

Sara L. Chenetz, Marcus, Montgomery, Wolfson, P.C., New York City, for Creditors' Committee.

Richard M. Seltzer, Cohen, Weiss & Simon, New York City, for Teamster Nat. Freight Industry Negotiating Committee.

**MEMORANDUM OPINION**

KAPLAN, District Judge.

The United States of America moves for an order (1) staying the Bankruptcy Court's order confirming the debtor's third amended plan of reorganization, (2) withdrawing the reference to the Bankruptcy Court of the debtor's allowance of the government's pre-petition claims, (3) staying the Bankruptcy Court's hearing on the objection pending this Court's ruling on the motion to withdraw the reference, and (4) staying any distribution to general unsecured creditors pursuant to the confirmation order pending final determination of the debtor's objection to allowance of the government's pre-petition claims.

The matter is of some urgency. Distributions pursuant to the plan were scheduled to commence on August 28, 1995. This application was brought on by order to show cause late on August 25, 1995, at which time the Court stayed the confirmation order to enable the debtor and other parties in interest to brief the motion for a stay. Opposing briefs were received on August 28, 1995. This is the Court's decision on the government's motion for a stay of the confirmation order and of any distributions pursuant to the plan pending appeal. The Court reserves decision on the motion to withdraw the reference and for a stay pending determination of that motion.

*Standard for Issuance of a Stay*

■ The standard for issuance of a stay pending appeal is similar to that governing motions for preliminary injunctions. The Court should consider (1) the movant's likelihood of success on appeal, (2) the risk of irreparable harm to the movant absent a stay, (3) the risk of irreparable harm to the other party if a stay is denied, and (4) the public interest. *In re Leibinger–Roberts, Inc.*, 92 B.R. 570, 574 (E.D.N.Y.1988); *see also In re Advanced Mining Systems, Inc.*, 173 B.R. 467 (S.D.N.Y.1994); *In re de Kleinman*, 150 B.R. 524, 528 (Bankr.S.D.N.Y. 1992). For the reasons set forth below, the Court concludes that these factors, taken together, warrant a brief stay pending an expedited appeal.

*The Merits of the Appeal*

■ The focus of the government's concern with the confirmed plan is release provisions in the plan and in the so-called Respon-

sible Officer Agreement approved by the plan. St. Johnsbury, formerly a major trucking company, would emerge from chapter 11 and liquidate pursuant to the plan. The plan contemplates the engagement of one Joseph J. Daly to act as the company's chief responsible officer during the post-confirmation period. The Responsible Officer Agreement would exculpate him from any personal liability *to any person* arising out of his appointment as Chief Responsible Officer except for liability created by gross negligence, willful misconduct or knowing violation of law. (Emphasis added). Moreover, Art. XII, § 11, of the plan would release "each person ... employed as an officer, employee or agent of the Debtor on the Plan Effective Date," the members of the Unsecured Creditors Committee, the attorneys for the Debtor and the Committee, Mr. Daly, and the financial advisers for the Debtor and the Committee from "liability for any action taken or omitted by or any of them in the chapter 11 case *or otherwise in connection with the performance of their duties.*" (Emphasis added).

The government's concern is that the Responsible Officer Agreement and Art. XII, § 11, of the plan would preclude recovery from responsible parties of (1) response costs pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, as amended ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.*, and (2) income and social security taxes withheld from employee wages pursuant to Section 6672(a) of the Internal Revenue Code, 26 U.S.C. § 6672(a). It contends that the Bankruptcy Court lacked jurisdiction to release the Responsible Officer and other non-debtors from potential liability for future violations of federal environmental and tax laws, as there is no actual case or controversy, and in any case that it lacked statutory authority to do so.

■ Given the time constraints in which this motion is being decided and the fact that the validity of the government's position is the subject of its appeal, the Court will not here engage in extensive analysis of the merits. The Court is aware that releases of non-debtors in some circumstances are appropriate features of chapter 11 plans. *See, e.g., SEC v. Drexel Burnham Lambert Group,*

*Inc. (In re Drexel Burnham Lambert Group, Inc.),* 960 F.2d 285, 293 (2d Cir.1992), *cert. dismissed,* — U.S. —, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993); *In re A.H. Robins Co.,* 880 F.2d 694, 701 (4th Cir.), *cert. denied,* 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989); *MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.),* 837 F.2d 89, 93–94 (2d Cir.), *cert. denied,* 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988). It appreciates, moreover, both the significance of the Bankruptcy Court's findings and the practical arguments advanced on behalf of the debtor. Nevertheless, the government argues that one effect of these releases is to curtail or abrogate civil liability to the United States for future violations of CERCLA and the Internal Revenue Code and that this is improper. The cases cited by the Debtor and the others who oppose the stay in this Court's view do not so conclusively establish the propriety of this aspect of the challenged releases as to preclude responsible argument on the point. Accordingly, it appears to the Court that the government has raised substantial questions concerning, *inter alia,* the interrelationship between the Bankruptcy Code, on the one hand, and CERCLA and the Internal Revenue Code on the other. *See, e.g., In re Brandt–Airflex Corp.,* 843 F.2d 90, 95–96 (2d Cir.1988).

*The Equities*

*The Threat of Mootness*

The government argues that it is threatened with irreparable injury absent a stay, as distributions pursuant to the plan will commence and the plan may be substantially consummated by the time its appeal from the confirmation order is heard. As there is authority for the proposition that substantial consummation renders an appeal from a confirmation order moot, *see, e.g., In re Specialty Equipment Companies, Inc.,* 3 F.3d 1043, 1048 (7th Cir.1993), the government fears that it will lose its right to review of the confirmation order absent a stay.

The Debtor, the Creditors Committee and the Teamsters contend that the government's fears are exaggerated because the initial distributions will be only to certain priority claimants, and they point to the govern-

ment's failure to concede that its appeal will be moot absent a stay. They rely also on the fact that the initial distributions will go in substantial part to the holders of priority wage claims who have been waiting two years for long overdue wage payments.

■ To begin with, the government's failure to concede that its appeal would be mooted absent a stay does not help those opposing the motion any more than the opponents' failure to concede that the appeal would not be so mooted harms them. Mootness is a doctrine grounded in constitutional considerations designed to limit courts to the resolution of actual controversies. *See Fox v. Board of Trustees of State University of New York*, 42 F.3d 135, 140 n. 2 (2d Cir. 1994), *citing Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78, 110 S.Ct. 1249, 1253–54, 108 L.Ed.2d 400 (1990). The parties to a judicial proceeding therefore cannot determine, even by agreement, whether a case is moot; that is for the court. *United States v. Johnson*, 801 F.2d 597, 600 (2d Cir.1986), *citing Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). In consequence, the government is correct that there is a risk that its appeal will be mooted absent a stay, and there is nothing either side can do about that. The government thus is threatened with irreparable injury.[1]

### The Interests of the Debtor and Creditors

The Court is mindful of the important interest of the former employees in finally collecting some part of their long overdue wages. These wages, however, have been delayed for about two years. Until the plan was confirmed on June 28, prospects as to when any distribution would be made were entirely speculative. The possibility of further delays has been apparent even since June 28, particularly in light of the government's prompt filing of a notice of appeal on

July 7. Moreover, as will appear below, a stay pending appeal need not mean a lengthy delay.

### The Government's Delay

More troublesome is the government's delay in seeking a stay. The plan was confirmed on June 26. The government filed its notice of appeal on July 7. It first raised the possibility of seeking a stay on August 17, during the course of negotiations with the debtor. The stay was not sought until August 25, the eve of the plan's effective date.

■ This Court is mindful of the authorities indicating that delay in seeking injunctive relief may undermine a claim of irreparable injury. *E.g., Fabrication Enterprises, Inc. v. Hygenic Corp.*, 64 F.2d 53, 61–62 (2d Cir.1995). But those cases do not control this one. In *Fabrication* and other similar cases, the threatened irreparable injury is competitive harm; delay in seeking an injunction gives rise to the inference that there is no serious harm because the applicant, who is in the best position to know whether it is being hurt, would have moved more quickly if there were. Here, on the other hand, the alleged irreparable injury is the threat that the government's appeal will be mooted if the plan is substantially consummated. No one denies that that is the law, and the government's delay in seeking a stay does not make the risk of mootness less likely.

■ Delay in seeking injunctive relief or a stay may be relevant for two other reasons. First, it may amount to laches. In other words, delay coupled with detrimental reliance by the party against whom the relief is sought may render the relief inequitable. Second, inappropriate delay may result in the imposition of an unfair burden on the Court and the party resisting relief simply by virtue of forcing both to address difficult issues in unnecessarily short spans of time.

---

1. The debtor cites a number of cases for the proposition that the threat of mootness of an appeal from a confirmation order is not alone sufficient to establish a threat of irreparable injury. The Court need not quarrel with that proposition to find a threat of irreparable injury here. If the government's appeal here is mooted, it will be precluded from challenging the contested aspect of the release and thus lose the ability to enforce some provisions of CERCLA and the Internal Revenue Code, at least in some circumstances, against the releasees. It is that threatened loss rather than the loss of the right to appeal *vel non* that gives rise to the Court's irreparable injury finding.

■ Here, the failure to seek a stay more promptly does not warrant denial in consequence of detrimental reliance by the debtor and others opposing that relief. They have been aware since early July that the confirmation order was under appeal. Moreover, the plan provides that its effective date is the *earlier* of the sixtieth day following confirmation or the date on which the debtor declared the plan effective. The debtor could have forced the issue long ago by declaring the plan effective. Its failure to do so, knowing that the government's appeal was outstanding and might yield a last-minute stay application that would interfere with consummation, does not leave it in the best position to complain of delay. Any reliance interest to be protected is modest.

The government's last-minute application is most troublesome because of the burden imposed on the Court to rule on a complex issue in very little time. Nevertheless, the Court is not prepared to deny this application on that basis given the nature of the issues as stake.

In sum, while each side is threatened with unquantifiable and irreparable injury in the event a stay is wrongly granted or denied, the Court concludes that the balance of hardship lies with the government. The loss of any opportunity to challenge on appeal a debatable order purporting to release parties from liability for future violations of the environmental and tax laws outweighs the consequences of a brief additional delay in long overdue wage distributions to former employees.

*The Public Interest*

Extended discussion is not required to establish that there is a strong public interest in appellate review of the issues raised by the government and that the denial of a stay may preclude that review.

### Conclusion

As the government has raised substantial issues warranting appellate review, and the equities and the public interest both support issuance of a stay pending appeal, the government's motion for a stay of the confirmation order and of any distributions pursuant to the plan is granted. The Court, however, will expedite briefing and determination of the appeal in order to minimize the delay in consummation of the plan in the event the confirmation order is affirmed. Accordingly, absent the filing on or before September 1, 1995 of a stipulation providing for a different schedule, the government shall serve its brief not later than September 5, 1995. The appellees shall serve and file their brief (or briefs) no later than September 11, 1995. The government's reply brief, if any, shall be filed no later than September 14, 1995.

SO ORDERED.