**In re Stuart E. ROBBINS, Debtor.**

**Bankruptcy No. 95–12497–JNF.**

United States Bankruptcy Court,
D. Massachusetts.

Sept. 22, 1995.

Bruce G. McNeill, Tarlow, Breed, Hart, Murphy & Rodgers, P.C., Boston, MA, for Debtor.

Gary W. Cruickshank, Boston, MA, for Trustee.

**MEMORANDUM**

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matter before the Court is the "Objection of Trustee to Debtor[']s Claimed Exemption." The Debtor filed a response to the Trustee's objection, and the Court heard the matter on August 15, 1995, following which the Court took the matter under advisement.

## II. FACTS

The parties do not contest the material facts, although, as will be discussed more fully below, the Court is unable to corroborate the agreed amount of secured debt on property owned by the Debtor and his spouse with the representations set forth in the Debtor's Schedules and Statement of Financial Affairs. The Debtor filed a voluntary petition under Chapter 7 on April 11, 1995. On Schedule A—Real Property, he listed an ownership interest valued at $130,000.00 in property located at 61 Park Street, West Roxbury, Massachusetts, title to which he and his wife held as tenants by the entirety. On Schedule A, the Debtor indicated that the property was subject to secured claims in the amount of $70,000.00. On Schedule C—Property Claimed as Exempt, the Debtor listed two claims of exemption with respect to the West Roxbury property: 1) a homestead held by his spouse valued at $150,-000.00; and 2) the tenancy by the entirety valued at $120,000.00. On Schedule C, the Debtor valued the property at $240,000.00. On Schedules D, E, and F pertaining to secured, priority and unsecured claims respectively, the Debtor identified six creditors with attachments against the West Roxbury property, including 1) the Internal Revenue Service in the amount of $19,991.14; 2) the Brimmer and May School in the amount of $19,119.16; 3) New England Insurance Co. in the amount of $5,000.00; 4) Stewart Title Guaranty Co. in the amount of $35,000.00; 5) Stewart Title Guaranty Co. in the amount of $36,843.38; and 6) First Lake Corporation in the amount of $338,988.97. On Schedule D—Creditors Holding Secured Claims, the Debtor listed various taxing authorities holding claims of $26,284.92.

Although not listed on any of the Schedules, the Debtor in response to question 3 on the Statement of Affairs revealed that he had made payments within 90 days of the filing of his bankruptcy petition to Fleet National Bank and Knutson Mortgage Corp. on "house loan[s]" of $44,000.00 and $18,7546.70 [sic] respectively. On Schedule J—Current Expenditures of Individual Debtor(s), the Debtor set forth "a rent or home mortgage" expenditure of $880 per month.

The Debtor and his spouse acquired the West Roxbury property as tenants by the entirety on June 27, 1977. The Debtor's spouse filed a Declaration of Homestead on March 10, 1993, approximately two years before the filing of the bankruptcy petition. According to the Trustee, the property has a present market value of $180,000.00, considerably less than the $240,000.00 value ascribed to the property by the Debtor.

## III. POSITIONS OF THE PARTIES

The Trustee maintains that ownership of the West Roxbury property is in the form of a pre–1980 common law tenancy by the entirety. Relying upon Massachusetts law respecting pre–1980 tenancies by the entirety, he asserts that he can sell the property subject to the Debtor's spouse's right of survivorship.

The Debtor responded to the Trustee's objection by attaching a copy of an election that he recorded with the Registry of Deeds for Suffolk County on July 18, 1995, three months after the commencement of the case and after the section 341 meeting of creditors. Pursuant to the election, he and his spouse chose to have their tenancy by the entirety "treated as being subject to the provisions of Chapter 209, Section 1 of the General Laws of Massachusetts, as amended by Chapter 727 of the Acts of 1979." See Mass. Gen.Law Ch. 209, § 1A (West 1987 & Supp. 1995). The Debtor also argued that the Trustee's objection should be overruled because the Debtor has no equity in the property. The Debtor maintains that the Trustee takes the property subject to the homestead of $100,000.00 and the secured claims of $70,-000.

Even assuming the absence of an election, however, the Debtor recognizes the existence of an interest in the amount of $10,000 that the Trustee would be able to sell. Nevertheless, he maintains that the wife's survivorship interest is indestructible, thereby permitting the Trustee to sell "little more than the debtor's right to possession, subject to the non-debtor wife's right of survivorship." In the Debtor's words,

It is wholly unreasonable to expect that any prospective buyer of the debtor's residence would payoff the existing $70,000.00 of mortgage encumbrances, pay the debtor's spouse her $100,000.00 claim of homestead, and then face the daunting prospect of evicting the debtor's spouse and their children from their residence, title to which would, in any event, continue to be subject to Mrs. Robbins [sic] right of survivorship.

## IV. DISCUSSION

■ The Trustee's objection raises two issues: 1) whether the election by the Debtor and his spouse to have their tenancy by the entirety treated as a post–1980 tenancy by the entirety is effective; 2) if not, whether the Trustee is entitled to sell the Debtor's interest subject to the wife's right of survivorship. The Court finds that the post-petition election is ineffective. Accordingly, what, if anything, the Trustee may sell for the benefit of the estate must be determined by an examination of relevant case law.

■ Tenancies by the entirety created prior to February 11, 1980 are governed by the common law. "[A] creditor of the debtor tenant husband may take possession of the property for as long as the debtor tenant shall live, subject to the non-debtor wife's right of survivorship." Somerset Savings Bank v. Goldberg (In re Goldberg), 166 B.R. 776, 777–78 (D.Mass.1994) (citations omitted). Section 1 of G.L. c. 209 "changed the old common law rule and effectively forbids a creditor from making a seizure of the home of the non-debtor spouse." Id.[1] Section 1A

---

1. Section 1 provides the following:

The real and personal property of any person shall, upon marriage, remain the separate

of c. 209, enacted in July of 1989, permits tenants by the entirety to elect to have their tenancy treated as being subject to section 1.

In *Goldberg*, the court noted that section 1A "permits a retroactive application of section 1 . . . [and] . . . provides no exception for pre-existing creditors." *Id.* at 778. Moreover, the court noted that the Debtor's election to have the pre–1980 tenancy by the entirety treated under section 1, which election occurred within 90 days of the filing of his bankruptcy petition, was not a fraudulent conveyance, stating "there is nothing fraudulent about the election. According to the district court, the Goldbergs merely did what the law permits, which is to put the non-debtor spouse's home out of the reach of all creditors." *Id.* at 779.

In this case, the Trustee, who is clothed with the rights of a hypothetical lien creditor, *see* 11 U.S.C. § 544, is in a position somewhat analogous to the creditor in the *Goldberg* case. Had the Debtor and his spouse made the election *prior to* the filing of the bankruptcy petition, the *Goldberg* ruling would dictate that the election be honored. However, in the instant case, the Debtor and his spouse made the election *post-petition*.[2]

 The question then becomes whether the Debtor, in effect, can make a *de facto* amendment to his schedule of exemptions to claim a section 1 tenancy by the entirety rather than a common law tenancy. Pursu-

ant to Fed.R.Bankr.P. 1009, the Debtor may amend "as a matter of course at any time before the case is closed." The Rule adopts "a permissive approach that freely allows amendments to lists or schedules without court permission at any time during the case." *In re Talmo*, 185 B.R. 637, 644 (Bankr.S.D.Fla.1995). However, a bankruptcy court has discretion to refuse permission if the amendments would prejudice creditors, or the debtor has acted in bad faith or concealed assets. *Id. See also Matter of Yonikus*, 996 F.2d 866, 872 (7th Cir.1993); *Matter of Doan*, 672 F.2d 831 (11th Cir.1982). Thus, to permit the Debtor the benefit of the post–1980 tenancy by the entirety, this Court must find, by clear and convincing evidence, *see In re Kobaly*, 142 B.R. 743, 748–49 (Bankr. W.D.Pa.1992), that there is no prejudice to the estate by such an implicit amendment.

 When a debtor files a bankruptcy petition, all his property, including property that he claims as exempt becomes property of the estate. *See* 11 U.S.C. § 541(a); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). As a general rule, the right to exemptions under the Bankruptcy Code is determined on the date the bankruptcy petition is filed. *See Martinson v. Michael (In re Michael)*, 185 B.R. 830, 831 (Bankr.D.Mont.1995), citing *In*

---

property of such person, and a married person may receive, receipt for, hold, manage and dispose of property, real and personal, in the same manner as if such person were sole. A husband and wife shall be equally entitled to the rents, products, income or profits and to the control, management and possession of property held by them as tenants by the entirety.

The interest of a debtor spouse in property held as tenants by the entirety shall not be *subject to seizure or execution by a creditor of* such debtor spouse so long as such property is the principal residence of the nondebtor spouse; provided, however, both spouses shall be liable jointly or severally for debts incurred on account of necessaries furnished to either spouse or to a member of their family.

Mass.Gen.Laws Ann. Ch. 209, § 1 (West 1987).

**2.** Parenthetically, section 549 of the Bankruptcy Code enables a Trustee to avoid certain post-petition "transfers" of property of the estate. The question of whether the election is a "trans-

fer" is similar to the issue of whether a debtor's recordation of a homestead is a transfer for purposes of section 548 of the Bankruptcy Code. Two courts in this district have answered that question in the negative, *see In re Messia*, 184 B.R. 176 (Bankr.D.Mass.1995) and *In re Rye*, 179 B.R. 375 (Bankr.D.Mass.1995). This Court concludes that the results reached in *Goldberg*, *Messia* and *Rye* should apply to a debtor and his or her spouse's election to have a pre–1980 tenancy by the entirety treated under section 1 of G.L. c. 209. The election is not a "mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of property or an interest in property. . . ." *See* 11 U.S.C. § 101(54). In short, the predicate for avoidance under section 549, a "transfer," is absent from the facts of the case and the post-petition timing of the election should not dictate a contrary result. However, an analysis of the issues before the Court under section 549 is not dispositive.

*re Gitts,* 116 B.R. 174, 178 (9th Cir. BAP 1990), *aff'd* 927 F.2d 1109 (9th Cir.1991).[3]

 If the Debtor is unable to make an election, the Debtor's interest in the tenancy by the entirety is not exempt under section 522(b)(2)(B).[4] Under well-settled Massachusetts law, a creditor can dispossess a debtor, subject to the Debtor's spouse's right of survivorship. Accordingly, as the Debtor recognized, the Trustee could attempt to sell the Debtor's interest, which is valued at $10,000.00, subject, of course, to the non-debtor spouse's right of survivorship.

There are only three decisions in this jurisdiction that consider the issue of whether a debtor's interest in a post–1980 tenancy by the entirety under M.G.L. c 209A § 1 is exempt. In an unpublished decision, Judge Skinner, affirming a decision of the Bankruptcy Court, ruled that since a statutory tenancy by the entirety may be reached by attachment, *see Peebles v. Minnis,* 402 Mass. 282, 521 N.E.2d 1372 (1988), the debtor's interest is not "exempt from process" as required by 11 U.S.C. § 522(b)(2)(B). *In re McConchie,* No. 89–0277–S, slip op. (D.Mass. February 21, 1990), *aff'g,* 94 B.R. 245 (Bankr. D.Mass.1988).

In *McConchie,* the debtor sought to claim her interest in a post–1980 tenancy by the entirety as exempt under section 522(b)(2)(B). Finding that G.L. c. 209, § 1 "is, at best, a limited conditional exemption statute," 94 B.R. at 248, the bankruptcy court rejected the debtor's argument that the post–1980 statutory tenancy by the entirety was exempt from process within the meaning of section 522(b)(2)(B), reasoning that since Massachusetts law authorized attachments against the statutory tenancy by the entirety, the entirety interest was not exempt from process. 94 B.R. at 247–48. The court ruled

that the trustee had an interest in the property as a result of his status as a hypothetical lien creditor under section 544(a)(1) or as a result of an expectancy on the termination of the tenancy by the entirety upon the death of the non-debtor spouse, divorce or sale of the property. However, recognizing that the trustee had no present power to enforce the estate's interest until the tenancy by the entirety was destroyed, the court ruled that the debtor had an exemption, limited by the trustee's expectancy. *Id.* at 249–50.

In *In re Digaudio,* 127 B.R. 713 (Bankr. D.Mass.1991), Judge Queenan upheld a Chapter 13 trustee's objection to confirmation of a debtor's Chapter 13 plan where the debtor had claimed his equity in a post–1980 tenancy by the entirety as totally exempt because it did not provide creditors the value they would receive in a Chapter 7 case in violation of 11 U.S.C. § 1325. Following *McConchie,* the court reasoned that the debtor's interest in the entireties property was subject to an attachment lien that could be asserted by the trustee, who had a hypothetical judicial lien under 11 U.S.C. § 544(a)(1). The trustee's hypothetical lien was available as security for the payment of all claims against the estate, which would ripen when the tenancy was terminated. As the debtor's equity of $19,000 was not made available to creditors under the Chapter 13 plan even though it was not exempt, the plan failed to pass the "best interests of creditors" test. *Id.* at 714–15.

On the other hand, in *In re Goldberg,* 166 B.R. at 777, the district court affirmed the bankruptcy court's avoidance of a judicial lien on the debtor's property pursuant to 11 U.S.C. § 522(f) where the debtor had taken the G.L. c. 209, § 1A statutory election after

---

3. Because the Debtor's interest in the West Roxbury property became property of the estate automatically by operation of section 541(a), the Trustee is not required to exercise his avoidance powers under section 544. Rather, the Trustee acts as a representative of the estate with respect to property that is claimed as exempt. *See In re Michael,* 185 B.R. at 832.

4. Section 522 provides in relevant part the following:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from proper-

ty of the estate the property listed in either paragraph (1) or, in the alternative paragraph (2) of this subsection.... Such property is— (2) ... (B) any interest in property in which the debtor had immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

11 U.S.C. § 522(b)(2)(B).

the creditor had obtained its attachment. The court in *Goldberg* did not address the *McConchie* or *Digaudio* decisions as that case did not involve the interest of a bankruptcy trustee in a post–1980 tenancy by the entirety. It is unclear whether the creditor argued on appeal that the debtor's statutory entirety interest was not exempt. In fact, it appears from the opinion that the issues before the court in *Goldberg* were limited to: 1) whether the debtor's election to change the common law tenancy by the entirety to a statutory one could retroactively affect the creditor's pre-election judicial lien; and 2) whether the election constituted a fraudulent conveyance; and 3) whether the avoidance of the creditor's lien was an unconstitutional taking.

In the present case, if the Court were to permit the Debtor and his spouse to retain the benefit of their post-petition section 1A election, the Court would not depart from the analysis set forth by the courts in *Digaudio* and *McConchie*. Since under Massachusetts law the Debtor's interest would be exempt from execution, but not exempt from attachment, the Trustee would have a contingent interest in the West Roxbury property. However, pursuant to G.L. c. 209A, § 1, the Trustee, at the present time, would be unable to enforce this contingent interest and could not reach the Debtor's interest because the tenancy by the entirety would remain intact. His interest could only be enforced if the tenancy by the entirety was destroyed by the death of the non-debtor spouse, divorce, or a sale of the property. If the non-debtor spouse were to outlive the Debtor, the Trustee's interest would be extinguished by operation of law, and the Trustee would have no interest in the property.

Comparing the rights of the Trustee and the extent of his property interest under the common law and statutory tenancies by the entirety, the Court finds that the Trustee's rights under the common law tenancy are superior to those under the G.L. c. 209, § 1. Although the value of the Trustee's interests under each tenancy has not been determined and may as a practical matter be *de minimis,* the Court finds that the post-petition election is prejudicial to creditors. Accordingly,

the Court finds that the Debtor's *de facto* amendment to Schedule C is ineffective.

## V. CONCLUSION

In view of the foregoing, the Court sustains the Trustee's objection to the Debtor's claimed exemption. The Trustee is free to take whatever steps he deems appropriate to reduce his interest to money for the benefit of creditors. *See* 11 U.S.C. § 704. The Court also orders the Debtor to file amended Schedules and a Statement of Financial Affairs that accurately depict secured, priority and unsecured obligations within 15 days of the date of this order.