**In re ADVANCED MINING SYSTEMS, INC., Debtors.**

**Gary LUTIN and Certain Non–Debtor Affiliates of Debtors, Appellants,**

v.

**ADVANCED MINING SYSTEMS, INC., et al., Debtors, Appellees.**

**No. 94 Civ. 5744 (CSH).**

United States District Court, S.D. New York.

Nov. 9, 1995.

See also 173 B.R. 467 and 1995 WL 92309.

*MEMORANDUM OPINION
AND ORDER*

HAIGHT, Senior District Judge:

This is an appeal from an order of the bankruptcy court for this district (Blackshear, *Judge*) disallowing and expunging a claim asserted against the debtors in a Chapter 11 proceeding.

The debtors-appellees are Advanced Mining Systems, Inc. ("AMS") and entities affiliated with it. Appellants are Gary Lutin, the former chairman of AMS, and entities not affiliated with AMS (the "Non–Debtor Affiliates"). The Non–Debtor Affiliates filed a proof of administrative claim on December 21, 1993. Debtors and the Creditors' Committee objected to the claim.[1] Judge Blackshear conducted a hearing on the objections on May 18, 1994, and sustained the objections to appellants' claim. R. 961. On June 3, 1994, he signed an order expunging the claim, with an exception not here pertinent. R. 963–64. Appellants appeal from that order.

This Court previously considered the case on appellants' contested motion for a stay of proceedings below pending appeal. I granted that motion in an opinion reported at 173 B.R. 467 (S.D.N.Y.1994). Subsequently the case was fully briefed on appeal.

For the reasons that follow, the order of the bankruptcy court is affirmed.

I

Debtors-appellees raise a threshold issue. Lutin is prosecuting this appeal and submitting briefs *pro se.* I have previously ruled that Lutin could not represent one of the Non–Debtor Affiliates involved in the appeal, Standard Asset Trust ("SAT"). Lutin seeks to finesse that ruling by stating in his main brief at 1 that he "is the only party in interest in a claim of Affiliates which is the subject of the appeal." There is no record evidence to establish that proposition. Appellees, relying on this Court's prior order, ask that the appeal be dismissed with prejudice. Lutin responds with a request for an

Marc H. Rosenbaum, Sharfman, Shanman, Poret & Siviglia, P.C., New York City, for appellants.

Gary Lutin, Lurin & Co., New York City, Pro Se.

Mark Broude and Arthur H. Amron, Schulte Roth & Zabel, New York City, for Official Committee of Unsecured Creditors, creditor.

Dennis J. Drebsky, Rogers & Wells, New York City, and Andrew Dash, Berlack Israels & Liberman, New York City, for debtors.

1. I reject appellants' contention, raised for the first time on this appeal, that these objections were procedurally defective.

opportunity to retain counsel on behalf of SAT. Counsel's efforts would probably consist of endorsing and refiling Lutin's extensive and articulate briefs. In order to avoid further delay in the case, I will consider the appellants' notice of appeal and briefs in their present form.

## II

Familiarity with this Court's opinion granting a stay pending appeal is assumed. That opinion considered the effect of the pertinent documents in the context of the likelihood of success on appeal, a factor in deciding whether or not to issue a stay. 173 B.R. at 469. The documents in question were a Settlement Agreement between the parties which the bankruptcy court transformed into an order by its endorsement dated September 14, 1993, and an Assignment Agreement executed on January 11, 1994. At issue was the Affiliates' rights to property collectively referred to as the Lease 4 Property. Those asserted rights underlie the Affiliates' proof of claim. Debtors and the Creditors' Committee contend that the Settlement Agreement terminated the claim. I concluded on the arguments then before me that "[a]t the very least, there is a substantial question going to the merits, worthy of litigation, and all other factors militate in favor of a stay." *Id.*

The issue has now been more fully briefed. I have reviewed the full record of proceedings before the bankruptcy court. The appeal fails because Judge Blackshear, who presided over the case from its inception, construed his own prior order in a manner which cannot be condemned as an abuse of discretion, or reversible on appeal on any other ground.

## III

The debtors filed a motion with the bankruptcy court to approve the proposed Settlement Agreement between the debtors, Lutin individually, and the Non–Debtor Affiliates. R. 688. The debtors' motion papers undertook to explain to the bankruptcy court the need for and beneficial effect of the settlement. They said in that regard:

9. Prior to confirmation it is desirable, if not required, that various significant disputes be resolved in order that the reorganization process can, in fact, proceed on an "orderly" basis and that the assets to be sold realize maximum values. That would not be likely if the disputes among the various parties to this Stipulation were not resolved since title to numerous of the assets in the Debtor's possession would be subject to conflicting claims of ownership, whether direct, indirect or beneficial. Moreover, although Debtors dispute the validity of the claims, there exists a note of more than $1.2 million held by one of the Non–Debtor Affiliates against the Debtors and an asserted administrative claim for more than $200,000 having been asserted by Mr. Lutin and the Non–Debtor Affiliates. The Settlement would cancel and extinguish any and all claims of Mr. Lutin and Non–Debtor Affiliates, including those referred to above, obviously removing a substantial obstacle to confirmation of the Plan.

10. Moreover, at various times prior to the commencement of these cases, it is alleged that Standard Asset Trust ("SAT"), and Standard Asset Management ("SAM") affiliates of the Debtors, acquired an interest in certain equipment necessary to the Debtors' operations, which it thereafter leased to certain of the Debtors. Various disputes have arisen between the debtors and SAT concerning the ownership of the assets and the liabilities attendant thereto. Debtors have filed a motion to have certain of the allegedly acquired assets of SAT reconveyed to debtors to the extent that they were not already owned by Debtors. That motion is set to be heard on September 14, 1993. Mr. Lutin and the Non–Debtor Affiliates have opposed that motion; their opposition would be resolved by the terms of this Settlement.

\*   \*   \*   \*   \*   \*

12. If the disputes mentioned above are litigated, the Debtors and this Court are likely to be involved in lengthy, complex, and expensive litigation. On the other hand, if the Settlement Agreement is ap-

proved, all of the above disputes will be resolved and Gary Lutin will resign as an officer and director of the Debtors and terminate all creditor and shareholder and executor contract rights of all non-debtor Affiliates, including SAM and SAT.

R. 691–92.

The bankruptcy court conducted a hearing on September 14, 1993 to consider objections to the Settlement Agreement made by the Creditors' Committee and two creditors of AMS. After hearing testimony and the arguments of counsel, Judge Blackshear approved the settlement. He articulated his understanding of its effect:

> What I see here is a case where it is basically about to be concluded. It will be concluded if I sign the Order approving this settlement.
>
> This settlement wipes out all litigation between Mr. Lutin and the nonaffiliated companies and the Debtor. If it does that, that wipes out a lot of the problems so that we can have a sale that doesn't have to be free and clear of interest, because in order to have it free and clear of interest those parties have to agree that their liens are attached to the proceeds.

R. 801–02.

At the conclusion of the hearing, the bankruptcy court "so ordered" the Settlement Agreement (the "Settlement Agreement Order"), dated September 14, 1993. ¶ 1 of the Settlement Agreement provided for:

> Payment, of $45,000.00 immediately as previously approved by the Court as a payment to SCS. Payment within 45 days of August 2, 1993 of 25,000.00 in Full Settlement of all outstanding debts, obligations or claims of whatever type or nature and whether asserted as pre or post petition, or administrative claims by Gary Lutin, the non-debtor Affiliates, SAT or SAM; ..."

¶ 8 provides:

> All claims by or against Debtor and the Non-debtor Affiliates or SAT will be extinguished and released; ...

R. 828–30.

The Settlement Agreement and the Settlement Agreement Order did not cause peace to break out on all fronts. Disputes continued to arise between the debtors on the one hand, and Lutin and the Non–Debtor Affiliates on the other. The debtors felt it necessary to move the bankruptcy court to compel Lutin to comply with the Settlement Agreement. Lutin responded that he was in compliance but the debtors were not. These skirmishes were eventually resolved by further negotiations which included the execution by Lutin on January 11, 1994 of an Assignment Agreement which provided in ¶ 2:

> Other than rights to seek indemnification from AMS by reason of Lutin having been an officer and director of AMS, the Non–Debtor Affiliates hereby ratify the termination or waiver of any and all rights they possess of whatever type or nature as creditor or holders of executory contracts against AMS. The creditor and executory contract claims being terminated by the Non–Debtor Affiliates effective as of the Settlement date include all such claims, whether fixed, liquidated, unliquidated, contingent, pre-petition, post-petition, or administrative and shall include all such claims as claims are defined in 11 U.S.C. § 101(5).

R. 909.

Against this background, Judge Blackshear dealt with the Non–Debtor Affiliates' proof of claim in excess of $500,000, arising out of the debtors' alleged failure to turn over certain assets to the Affiliates. At a hearing on May 18, 1994, counsel for the debtors, having gone this chronology, argued to Judge Blackshear that the claim should be expunged:

> After having gone through all of this, these same non-Debtor affiliates who were represented by counsel then have the gall to come in and file a claim with this Court saying that the assets that were the subject of this dispute were converted by the Debtors and they are entitled to something like half million dollars in damages when they have given up every claim they could conceivably have of any type whatsoever.

R. 960.

Judge Blackshear agreed:

THE COURT: It is very outrageous because simply put is that I remember now what happened in this matter and Mr. Lutin gave up for himself as well as his affiliate any claim that it had against this estate [for] $70,000.

R. 960–61.

The bankruptcy court then entered the order appealed from.

## IV

 In expunging the appellants' claim, the bankruptcy court interpreted its Settlement Agreement Order as terminating that claim. It is well settled that an appellate court will not reverse a lower court's interpretation of its own order unless the record clearly shows an abuse of discretion. The lower court's interpretation of its own order is entitled to great weight on appeal, and will be accepted, absent a compelling basis to hold otherwise. These principles reflect the reality that the lower court is in the best position to interpret its own orders. *See In re Buckhead America Corp.,* 180 B.R. 83, 88 (D.Del.1995), and cases cited.

There is no basis to hold that Judge Blackshear abused his discretion in interpreting his Settlement Agreement Order to bar appellants' claim and the additional litigation it would engender. When the debtors moved for approval of the agreement, they stressed the need to terminate the litigation, and said in their papers that that the Settlement Agreement would have that salutary effect. At the hearing Judge Blackshear said that was his understanding of the document, and no one said him nay. The Settlement Agreement contains language entirely consistent with the interpretation the bankruptcy court placed upon the Settlement Agreement Order—an interpretation reinforced by the language in the subsequently executed Assignment Agreement.

The order of the bankruptcy court is affirmed.

I extend the stay of proceedings in the bankruptcy court for an additional fifteen (15) days from the date of this Opinion and Order. Appellants must seek any further stay from the court of appeals.

SO ORDERED.

